# CASES DETERMINED

## *January Term, 1893.*

THE LAND, LOG & LUMBER COMPANY, Appellant, vs. ONEIDA COUNTY and others, Respondents.

*October 3, 1892 — January 10, 1893.*

*Counties: Division: Apportionment of indebtedness: Repayment of loan from trust fund: Application of drainage fund: Towns: Interest.*

1. Under the general laws a loan from the trust funds to a county is repaid with money raised by taxation; and one half of the proceeds of sales of swamp lands in a county constitutes a drainage fund, which is paid over to the county and by it apportioned to the towns therein. By ch. 314, Laws of 1881, it was provided that moneys realized from the sales of swamp lands in Lincoln county, not theretofore set apart for normal school purposes, should be applied by the state treasurer as payments upon a loan theretofore made to, said county. Afterwards Oneida county was created from a part of Lincoln county, and it was provided that the assets and liabilities of Lincoln county should be apportioned between the two counties, and that Oneida county's proportion of the said indebtedness to the state should "be collected and paid by said Oneida county in the same manner as if the loan had been made to said county of Oneida." *Held*, that ch. 314, Laws of 1881, did not apply to Oneida county, and that said county was entitled to receive its proportion of the drainage fund, and was liable to taxation for its proportion of said indebtedness to the state.

2. The state treasurer having, without authority, retained the drainage fund properly payable to Oneida county and applied the same upon its share of the indebtedness aforesaid, the county board of said

The Land, Log & Lumber Co. vs. Oneida County and others.

county properly allowed the claims of the towns therein for the portions of such fund to which they would have been entitled had the county received the same; and a taxpayer cannot complain of such allowance.

3. The county board also properly allowed to the towns interest on the amounts so due them, from the time such amounts were credited to the county on its indebtedness to the state.

APPEAL from the Circuit Court for *Oneida* County.

The plaintiff corporation is the owner of large quantities of land in the defendant county and towns, and brings this action to restrain the county from paying certain county orders issued by it to such towns, and to annul such orders.

This appeal is from the following orders of the circuit court: (1) An order denying a motion on behalf of the plaintiff company to strike out as frivolous the general demurrer of two of the defendants to the complaint; (2) an order dissolving a temporary injunction; and (3) two orders sustaining general demurrers, by different defendants, to the complaint.

The facts out of which the alleged cause of action arose, as stated in the complaint, are as follows:

From 1880 and before, until January 1, 1887, the territory now constituting *Oneida* county was a portion of Lincoln county. The act creating the county of *Oneida* is ch. 411, Laws of 1885. It provides for the equitable division of the assets and liabilities of Lincoln county between the two counties, on the basis of the equalized assessment of property therein for taxation in 1884. One of the liabilities of Lincoln county at that time was an indebtedness to the state on account of a loan of $55,000 of trust funds to such county, pursuant to ch. 280, Laws of 1880. The act provided that the interest, and ten per cent. of the principal of such loan, should be charged to the county annually, as part of the state tax apportioned thereto, until the loan should be paid. By ch. 314, Laws of 1881, ch. 280, Laws of

1880, was amended so that the state treasurer was required to apply on such annual payment of interest and ten per cent. principal of the loan such moneys in his hands as were realized from sales of swamp lands in Lincoln county, not theretofore set apart for normal school purposes, and to charge to the county, as part of the state tax apportioned to it, only the unpaid balance of such required annual payment. Ch. 260, Laws of 1883, provides that Lincoln county shall be credited every three months with the amount in the hands of the state treasurer, which the act of 1881 makes applicable to the payment of such loan. Such were the provisions of law affecting the loan to Lincoln county when the act creating *Oneida* county went into effect on January 1, 1887.

Under the general statutes, one half of the proceeds of sales of swamp lands constitutes a drainage fund. This fund is distributed annually to the several counties in which the lands sold are situated — each county receiving the portion thereof arising from sales of such lands situated therein. The amount of the drainage fund thus paid to any county is then annually apportioned between the towns in which such lands are located, and each town receives its proper share of the fund from the county treasurer, to be expended by it for the purposes specified in the statute. R. S. secs. 251-257.

Ch. 153, Laws of 1887, amends ch. 411, Laws of 1885, in respect to the adjustment and division between the two counties of Lincoln and *Oneida* of the assets and liabilities of Lincoln county. It provides, among other things, for ascertaining the proportion of the indebtedness of Lincoln county to the state on account of the loan of 1880 which *Oneida* county should pay, and that the amount thereof, when thus apportioned, "shall be collected and paid by said *Oneida* county in the same manner as if the loan had been made to said county of *Oneida*." The proportion of

The Land, Log & Lumber Co. vs. Oneida County and others.

such indebtedness chargeable to *Oneida* county having been ascertained in the manner specified in ch. 153, Laws of 1887, the state treasurer retained the drainage fund which otherwise would have been paid to *Oneida* county, and applied it on its proportion of such indebtedness. The several towns in *Oneida* county to which the drainage money payable to that county would have been distributed under the general statutes (being the defendant towns) claimed of the county the amount of such moneys which would have been payable to them respectively had the county received the fund. The county board of supervisors, admitting the legality of such claims and the obligation of the county to pay them, allowed the same, and issued and delivered to the treasurer of each town county orders for the amount to which such town would be entitled under the general statutes, with interest thereon from the time the same was credited by the state treasurer to the county. The respective town treasurers, who are defendants in this action, hold such orders, and the towns claim that they are valid obligations against the county.

The following is the opinion of Judge BARDEEN, omitting the statement of facts:

". . . According to the legislation in force at the time Lincoln county made its loan from the state, the drainage fund, so called, derived from the sale of swamp lands, was to be distributed by the state to the several counties wherein such lands were, and by the county apportioned to the different towns in the manner stated. That the state has full power to control and dispose of the drainage fund as it sees fit, as against every person except the United States, is settled by *La Pointe v. Ashland*, 47 Wis. 251, and cases there cited. The several towns in the state have no right to the fund, save such as is given by the legislative enactment, which may be changed or altered at the will of the legislature. I think it is clear that when the swamp

lands are sold the proceeds therefrom become immediately, by force of the statute, a part of the different funds into which it is divided, and in the absence of any special legislation such proceeds become subject to apportionment to the different towns, as prescribed by the general law.

." The plaintiff contends 'that the moneys alleged to have been received by the state treasurer never became a part of the drainage fund subject to apportionment,' etc., because the same had been otherwise appropriated by the special acts before cited; or, in other words, that ch. 314, Laws of 1881, applied to, and continued to apply to, all the territory of Lincoln county as it then existed, and diverted that portion of the drainage fund going to the towns within this territory to the payment of the debt of Lincoln county, until such debt was paid.

" To my mind it is clear that as soon as the swamp lands were sold the proceeds became a part of the drainage fund under the drainage law, and that the effect of ch. 314 was to change the beneficiary to the fund in so far as the county continued to exist as it then existed.   While it is true there is no word in the act expressly cutting the towns in this county off from their right to this fund, yet the direction to the state treasurer to apply on the loan of the state to Lincoln county the amount realized from swamp land sales during the year must be held to be a diversion of the fund to a different beneficiary, and in effect cut off the towns from any claim thereto, so long as the act in question remains applicable to this territory.   The contention of the defendants that the subsequent legislation creating *Oneida* county (which makes no provision for the disposition of the drainage fund in the territory detached) takes this territory out of the operation of ch. 314, raises a more difficult and troublesome question.   Sec. 7 of the act creating *Oneida* county (ch. 411, Laws of 1885) provides that the new county shall be liable for its just share of the

The Land, Log & Lumber Co. vs. Oneida County and others.

'liabilities and indebtedness' of Lincoln county (which must, of course, have included its state indebtedness) according to a fixed ratio, and provided for a committee to make the settlement. This condition of things continued from January 1, 1887, to April 18, 1887, when ch. 153 was passed, providing that commissioners should be appointed to ascertain the portion of the indebtedness of Lincoln county to the state each county should pay, and, when so ascertained and apportioned in the manner so provided, the act says 'that the amount apportioned to said *Oneida* county by said committee shall be collected and paid by said *Oneida* county in the same manner as if the loan had been made to said county of *Oneida*.' Nothing was said in regard to the drainage fund.

"Ch. 314, Laws of 1881, by its terms, applies specifically to Lincoln county, and there is nothing in the organic act of *Oneida* county indicating an intention of the legislature to bring the new county under the operation of this act; and, in the absence of such an intention, the special act has no application to the new county. *Shevlin v. Whelen,* 41 Wis. 88. Under the law creating *Oneida* county, it became absolutely liable to Lincoln county for its just share of the debt due the state.

"Ch. 153, Laws of 1887, operated to make *Oneida* county the debtor of the state, instead of Lincoln county, and says that its share of the debt shall be collected and paid in the same manner as if the loan had originally been made to it, that is, this debt shall be paid by taxation, that being the usual manner. The application of the drainage fund arising from this territory was not a condition precedent to the loan. If this is so, then the territory set off into *Oneida* county must come under the operation of the general law relative to the distribution of the drainage fund, unless it shall be held that ch. 314 applies to the territory then situate in Lincoln county.

"The debt was a debt of the municipality. It was not created with reference to the application of the drainage fund to its extinguishment. Ch. 314 seems to have been an afterthought, and applies only to Lincoln county. No peculiar sacredness surrounds the act or its purpose. It was surely competent for the legislature to provide means to ascertain the exact amount due the state from the detached territory as its just proportion, and it might as surely provide that the state should look to this new municipality for the payment thereof. When it did so, and provided that this debt should be collected and paid in the same manner as if the loan had been made directly to *Oneida* county, to my mind it evidenced an intention to change the former order of things, and bring all the detached territory under the operation of the general law.

"But the plaintiff says, under the law the town is the beneficiary of the drainage fund, which comes directly from the state, and until it has actually been paid over to the county the towns have no rightful claim against the county. Admit this to be true, the case made out here seems to me to be quite different. It is conceded that this money has been used in liquidation of the debt of *Oneida* county to the state, and that the former has had the benefit of the amounts stated in this complaint. If, as I have attempted to show, this money was the money of the towns, it would seem to be a very just and proper thing for the county having had the benefit thereof to reimburse the towns, or pay them their just dues.

"Admit that the towns could not maintain an action against the county for this money, and that their right of action, if any, was against the state, does this put the plaintiff in any better position? Here is a party, having received and used the town's money, now seeks to make it good to them. If the county had no right to it, assuredly it would have to pay it back to some one, and

The Land, Log & Lumber Co. vs. Oneida County and others.

the amount of its debt, thus wiped out by the drainage money, would have to be paid by taxation. Neither the plaintiff nor the other taxpayers of the county would be in any worse condition if the county pays directly to the towns instead of paying back to the state, and then raising the amount by taxation. No matter which way you turn, in the ultimate event the county must pay. How, then, is a taxpayer injured? He pays the same in one case as taxes that he would in the other. I can see no legal objection to a party who has received money belonging to another arranging with him to make good his wrong.

"My conclusion is that the plaintiff has not shown itself entitled to maintain this action."

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *E. P. Vilas*.

For the respondents there was a brief by *A. W. Shelton*, attorney for *Oneida County* and *G. H. Clark*, county treasurer; a brief by *Alban & Barnes*, attorneys for the other respondents, and *N. A. Colman*, attorney for the town of *Eagle River*; and oral argument by *John Barnes* and *A. W. Shelton*.

The following opinion was filed October 25, 1892:

LYON, C. J. Although the orders appealed from contain the rulings of the circuit court on two demurrers and two motions, the question by which each order must be tested is, Does the complaint state facts sufficient to constitute a cause of action? If it does, all the orders must be reversed. If it does not, they must all be affirmed.

We think the learned circuit judge held correctly that as soon as *Oneida* county was organized it became the debtor of Lincoln county for its proper proportion of the indebtedness of the latter county to the state, and hence that the provisions of ch. 314, Laws of 1881, directing the drainage fund, which otherwise would have been payable to Lincoln

The Land, Log & Lumber Co. vs. Oneida County and others.

county, to be retained in the state treasury and applied to the payment of such indebtedness, ceased to have effect in *Oneida* county; and that, from its organization, the latter county was entitled to receive its proportion of the drainage fund, and was liable to be taxed to pay its proportion of such indebtedness of Lincoln county. But were it held that the act of 1881 continued in force in *Oneida* county after its organization, and that such county was not entitled to receive any portion of the drainage fund while the act remained in force, we should further be of the opinion that such act was repealed by ch. 153, Laws of 1887, which placed that county under the general laws of the state in respect to the indebtedness of the county to the state. Such we think is the meaning of the provision that the amount of such indebtedness apportioned to that county shall be paid by it " in the same manner as if the loan had been made to said county of *Oneida*." This language seems to exclude the hypothesis that *Oneida* county was to remain subject to the special provisions of the act of 1881, else ch. 153 would have so provided. We think the fair inference from the language employed is that the legislature intended to provide and did provide that the indebtedness of *Oneida* county to the state should be payable in the same manner as it would have been had the state made a loan directly to that county, under the general laws on that subject. S. & B. Ann. Stats. secs. 258*a*–258*f*. In such case the debt would have been levied upon the county in annual instalments, and the money raised by tax to pay the same, and the drainage fund would be paid over to the county for the towns entitled thereto, under the general laws in that behalf.

We also think it is immaterial that the drainage fund belonging to the defendant towns was never actually paid into the county treasury. The county could have enforced payment thereof, and then would have distributed the same

to the towns pursuant to the statute. In that case the towns would have received the same amounts allowed them by the county board of supervisors, and the same amounts would have been required to be raised by tax on all the taxable property of the county to pay its indebtedness to the state. Instead of resorting to that process, the county acquiesced in the unauthorized retention by the state of the drainage fund, and its application on such indebtedness, and allowed the claims of the towns for the portion of the fund to which they would have been entitled had the county received it. The amount thus allowed must, of course, be raised by taxation, but no taxpayer will be required to pay any more tax than he would have been required to pay had the county insisted on actual payment to it by the state of the drainage fund. In substance and legal effect the fund was paid to the county, and by it appropriated to the towns entitled thereto.

The opinion of Judge BARDEEN on these questions is so clear and satisfactory that we feel relieved from the necessity of further discussion of them.

The county board of supervisors allowed the defendant towns interest on the amounts due them, respectively, from the time such amounts were credited to the county on its indebtedness to the state. It is claimed that this was unauthorized. When those amounts were thus credited, interest thereon ceased to be chargeable to the county. At the same time the towns were entitled to the money thus credited to the county. We perceive no good reason why such interest was not properly allowed the towns.

*By the Court.*— The orders of the circuit court from which this appeal is taken are all affirmed.

Upon a motion for a rehearing there was a brief for the appellant by *Levi J. Billings*, of counsel, and a brief for the respondents by *Alban & Barnes*.

The motion was denied January 10, 1893.