STATE, Appellant, vs. CITY OF MILWAUKEE, imp., Respondent.

STATE, Respondent, vs. CITY OF MILWAUKEE, Appellant, and another, Respondent.

*October 7—November 17, 1914.*

*Municipal corporations: Legitimate expenses: Maintenance of criminal courts: Action by state for fines collected: Liability of city and county: Equitable procedure: Determining issues between defendants: Accounting: Filing claim against county, when not necessary: Deduction of collection fees: Limitation of actions: When cause of action accrued: Interest, when allowed: Demand: Equitable considerations.*

1. Under the statutes relating to the municipal and district courts in the city and county of Milwaukee, the cost of maintaining those courts is a legitimate municipal expense.

2. In an action by the state against the city and county of Milwaukee to recover, for the benefit of the school fund, the clear proceeds of fines collected by the city and paid out by it to defray expenses of the criminal courts within the county (for one half of which expenses the city was entitled to be reimbursed by the county), although the primary matter to be adjudicated was the right of the state to recover against one or both of the defendants, yet, the action being tried by the court, equitable procedure should have been applied and, for the purpose of settling the whole controversy, the city and county should have been permitted to litigate the secondary issue, arising directly out of the subject matter of the main litigation, as to how far the county had in fact reimbursed the city for the expenses mentioned.

3. It appearing, however, in such case that the city was primarily liable to the state for all the moneys sought to be recovered, a judgment against the city therefor is, upon appeal therefrom, allowed to stand and only the secondary issue between the city and county is remanded for adjudication.

4. For the purpose of the accounting involved in said issue as to reimbursement, it is not necessary that the city should have filed a claim against the county. The state was not obliged to file its claim against either municipality and, it having brought them both in as parties to the action, the court may take the accounting and settle their mutual claims and thus determine

all the rights of the parties growing out of the primary subject of the litigation.

5. The moneys collected by the city as fines not having been turned over to the county treasurer, no collection fee was earned by him, and the amount recoverable by the state should not be reduced on account of any such fee.

6. The proceeds of the fines collected by the city in 1898 not having become due and payable to the state until February 6, 1899 (sec. 1121, Stats. 1898), no cause of action therefor accrued to the state until that date, even though the city before that time used such moneys for legitimate municipal expenses.

7. Where no time of payment is fixed, or where a claim is unliquidated, or where there are reasonable grounds for believing that no liability exists, a demand is, in the absence of peculiar equitable considerations, necessary to set interest running.

8. But where the time of payment is fixed by contract or by law and the amount to be paid is easily ascertainable and the duty to pay plain, no demand is necessary to start the running of interest, whether the claim be against an individual or a municipality.

9. Where an individual or a municipality intentionally withholds the payment of funds required by law to be paid to the state or a municipality at certain specified times, the individual or municipality guilty of such withholding should be charged with interest from the time payment should have been made.

10. So *held* in an action by the state to recover, for the benefit of the school fund, the proceeds of fines collected by a city and belonging to said fund, although the state had for fifty years slept upon its rights and acquiesced in nonpayment, the state being a *quasi*-trustee of the funds so that its laches should not operate as effectively against the *cestui que trust* as perhaps it might against the state itself, and it appearing, moreover, that recovery of a large amount of such fines was barred by the statute of limitations.

APPEALS from a judgment of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Modified and affirmed in part; reversed in part.*

Action to recover from the *City* and *County of Milwaukee* the clear proceeds of all fines and penalties collected by the city for the years 1898 to 1908 inclusive. The case has been here twice before and will be found reported in 145 Wis. 131, 129 N. W. 1101, and in 152 Wis. 228, 138 N. W. 1006.

The court found as facts:

"(1) That this action was commenced and is prosecuted at the request and under the direction of the governor of the state of Wisconsin.

"(2) That the defendant *City of Milwaukee* received into its treasury as the clear proceeds of fines imposed and collected within the *County of Milwaukee* by the courts having criminal jurisdiction in said *County of Milwaukee* and for violation of the penal laws of this state, the sums of money and within the respective years, as follows, to wit:

| | |
|---|---:|
| 1898 | $3,746 00 |
| 1899 | 4,062 00 |
| 1900 | 3,761 00 |
| 1901 | 5,953 00 |
| 1902 | 7,342 00 |
| 1903 | 9,049 00 |
| 1904 | 8,095 00 |
| 1905 | 12,124 00 |
| 1906 | 16,278 00 |
| 1907 | 11,286 00 |
| 1908 | 13,758 00 |
| Making a total of | $95,454 00 |

"(3) That said sums were actually received by said defendant *City of Milwaukee,* and used by it at or about the time of the receipt of said respective sums in carrying out and performing the legitimate municipal functions and purposes of said city, to wit, in and about the payment of the expenses for the maintenance and carrying on of the courts having criminal jurisdiction within said *County of Milwaukee.*

"(4) That said defendant *City of Milwaukee* failed and neglected to pay said sums, or any part thereof, to the said plaintiff, or to any one for its use or on its behalf.

"(5) That none of said sums or any parts thereof were paid over by the said *City of Milwaukee* to the defendant *County of Milwaukee.*

"(6) That the third amended complaint, being the one upon which said cause was brought to trial, was served upon the defendant *City of Milwaukee* on January 11, 1912."

As conclusions of law the court found:

"(1) That recovery for the fines collected and received for the year 1898, amounting to $3,746, is barred by the statute

of limitations, and the plaintiff is not entitled to recover for the same.

"(2) That the plaintiff is entitled to have and recover of the defendant the *City of Milwaukee* the sum of $91,708.

"(3) That the plaintiff is entitled to interest on the sum specified in the preceding conclusion of law at the rate of six per cent. per annum from and after January 11, 1912, to the time of the entry of judgment herein.

"(4) That the action should be dismissed as to the defendant *County of Milwaukee*.

"(5) That the plaintiff is entitled to its taxable costs and disbursements against the defendant *City of Milwaukee*. . . ."

From a judgment entered accordingly the *City of Milwaukee* appealed. The state also appealed from that part of the judgment refusing to allow a recovery for the fines collected in 1898, and from the part adjudging that the plaintiff is entitled to recover interest only from January 11, 1912.

For the plaintiff there were briefs by the *Attorney General* and *Walter Drew,* deputy attorney general, and oral argument by *Mr. Drew.*

For the defendant *City of Milwaukee* there were briefs by *Daniel W. Hoan,* city attorney, and *Charles W. Babcock,* assistant city attorney, and oral argument by *Mr. Babcock.*

For the defendant *County of Milwaukee* there was a brief signed by *Lyman G. Wheeler,* special assistant district attorney, and oral argument by *Mr. Wheeler.*

VINJE, J.   The city upon its appeal makes two main contentions: First, that the case was improperly dismissed as to the county; and second, that it was error to recover from the city the full amount of fines collected, since the county was entitled to a collection fee of two per cent.

1. The circuit court found that the fines collected by the city had been used by it in defraying the expenses of courts having criminal jurisdiction within the *County of Milwau-*

*kee.* Such courts were the municipal and district courts of said county. The municipal court was created by ch. 199, P. & L. Laws of 1859. It provides: "There shall be established in the *City* and *County of Milwaukee* a municipal court for the transaction of all business that may lawfully come before it, and for that purpose the *City* and *County of Milwaukee* is hereby constituted a municipality." Originally the court had jurisdiction of all cases of crimes and misdemeanors arising within *Milwaukee County* "except such as may be punishable with death or in the state prison for life." The court as thus established, with jurisdiction extended to all criminal cases, has since been continued. See ch. 489, P. & L. Laws of 1871; ch. 43; Laws of 1865; ch. 256, Laws of 1879; and ch. 7, Laws of 1895. The district court was created by ch. 218, Laws of 1899, and was given jurisdiction of all minor criminal cases arising within *Milwaukee County.* Both courts have the same territorial jurisdiction, the same clerk, and the money collected from fines and penalties imposed by either court is held by the treasurer of the *City of Milwaukee* in a fund called the municipal and district court fund. It was out of this fund that the proceeds of all fines and penalties sought to be recovered were paid for defraying the expenses of the two courts.

The statutory provisions for the payment of the expenses of the municipal court are these: The salary of the judge, clerk, and deputies shall be "all payable monthly at the end of each and every month by the *City of Milwaukee.*" Sec. 2513, R. S. 1878, as amended by sec. 8, ch. 7, Laws of 1895 (Hirschberg's Milwaukee County Laws, sec. 1165). Sec. 2506, R. S. 1878, as amended by sec. 4, ch..7, Laws of 1895, requires the clerk of the court, under the direction of the common council of the *City of Milwaukee,* to "procure and furnish all necessary blanks, stationery, book and paper cases, desks, record books, office furniture, lights and fuel, for the use of said court and its clerks, at the expense of said city." Likewise a seal for the court was required to be procured at

the expense of the city.    Ch. 256, Laws of 1879 ; ch. 7, Laws
of 1895.    Similar statutory provisions are made with refer-
ence to paying the expenses of the district court.    See sec. 16,
ch. 218, Laws of 1899 (Hirschberg's Milwaukee County
Laws, sec. 1354) ; sec. 9, ch. 218, Laws of 1899 (Hirsch-
berg's Milwaukee County Laws, sec. 1347).    By sec. 2512,
R. S. 1878 (Hirschberg's Milwaukee County Laws, sec.
1171), it was made the duty of *Milwaukee County,* annually,
at the time the city was required to pay over county and state
taxes, to pay the *City of Milwaukee* one half of the salaries
of the judge, clerk, and deputy clerks of the municipal court,
and one half the expense of the blanks, stationery, book and
paper cases, desks, record books, office furniture, lights, and
fuel used for said court and its clerks, and the other expenses
of said court, which have been paid for by said city.    A
similar statutory provision is made with reference to the
county reimbursing the city for one half the expenses of the
district court.    Sec. 14, ch. 218, Laws of 1899 (Hirschberg's
Milwaukee County Laws, sec. 1352).

It will thus be seen that when the city paid out the pro-
ceeds of the fines collected for defraying the expenses of the
two courts it was only complying with a duty imposed upon
it by statute.    Upon the first appeal of this case (*State v.
Milwaukee,* 145 Wis. 131, 129 N. W. 1101) it was ruled
that the city could be held liable only in the event and to the
extent that it had used the proceeds of the fines and penalties
turned over to the city treasurer for legitimate municipal ex-
penses.    That the cost of maintenance of the two courts in
question is legitimate municipal expense is evident from the
statutory provisions relating thereto.    But it is urged on be-
half of the city that since the statute cast the duty upon the
county to contribute one half thereof, one half of the money
so paid out by the city should be regarded as paid out for a
legitimate county expense, and that the suit was therefore
improperly dismissed as to the county.    There is much force
in this contention, and had the proof showed that the city

was in no wise reimbursed by the county for one half of such expense the judgment might well have gone equally against the city and the county. The city sought to show such a state of facts, but was prevented by the rulings of the court upon objections made by both the state and the county. After making objections to the city's proof on this branch of the case the county offered to prove that it had since 1898, up to the time of the trial, paid large sums toward the support of the district and municipal courts, aggregating more than one half their expense. To this proof the city made no objection, but the state did on the ground that it was immaterial and irrelevant and not within the issues. The court sustained the objection of the state on the theory that there was no such issue before the court; that it could not go into the account between the city and the county as to the city's reimbursement by the county for one half the expense of the courts; and that the only question before the court was the liability of one of the defendants.

It is true that under the statutes relating to the maintenance of the two courts the city, upon the proof made, was shown to be primarily liable to the state, but it claimed the right to show that its codefendant was liable, if not to the state directly, then to itself, for one half of the moneys expended by it for the maintenance of these courts. This it should have been permitted to do in order that the whole controversy might be settled in one action and the rights of all the parties adjudicated upon between themselves as well as between the plaintiff and defendants. The action was for money had and received, tried by the court, and rules of practice applicable to equity cases should have governed its procedure. The primary matter to be adjudicated was the right of the state to recover against the defendants or either of them. The secondary matter growing directly out of the primary matter was the adjustment between the two defendants of their rights as between themselves. All parties were before the court, necessarily brought there because of their

connection with the primary matter; and the claim which the city sought to adjust with its codefendant sprang directly out of the subject matter of the main litigation. In such cases courts should dispose of the whole controversy. While this is not a creditors' action, the language used in *Harrigan v. Gilchrist,* 121 Wis. 127, 299, 300, 99 N. W. 909, is peculiarly apt. It was there said:

"One of the most valuable features of equitable remedies is the opportunity they afford the court to lay hold of a subject matter, however large, made up of a single primary right and all rights germane thereto, however numerous, or several such subject matters under certain circumstances, bring all parties directly interested before the court, with all parties necessary to be there for their due protection, and settle the entire controversy by a single decree in a single administration proceeding, giving to each party his just measure of relief or protection, and each his just measure of punishment, forever closing the primary dispute and all so connected therewith as to be legitimately considered a part thereof."

So here, while this was strictly not a suit in equity it was an action tried by the court and to which equitable procedure should have been applied, so that all claims connected with and necessarily growing out of the subject matter of the litigation would be finally settled between all the parties thereto.

But since under the proof the city was primarily liable to the state for all the moneys derived from fines and not paid over, the judgment against it will stand, and only the issue between the city and the county as to the extent, if any, the county has reimbursed the city during and since the year 1898 for the moneys expended by the city for the maintenance of the two courts will be remanded for adjudication, to the end that if the city is entitled to a judgment against the county by reason of its having to answer the demands of the state it may have it in this action. The state, if it desires, may remain a party to the issue to be tried.

For the purpose of the accounting indicated it is not neces-

sary that the city should have filed a claim against the county in order to recover judgment if it is otherwise entitled thereto. The state in its sovereign power has brought both the city and the county into court, and it was held upon the former appeal (*State v. Milwaukee,* 145 Wis. 131, 129 N. W. 1101) that the state was not obliged to file its claim against either municipality as provided by statute in the case of private claims in order to begin and maintain the action. Such filing, in the case of private claims, is a prerequisite to the right to maintain an action. When an action is properly begun the statutory requirement no longer attaches, but the court may take an accounting and settle mutual claims, when that is necessary to a complete and final determination of all the rights of the parties growing out of the primary subject of litigation.

2. The city's claim that a recovery should have been had for only ninety-eight per cent. of the amount collected, since the county treasurer was under the law entitled to a collection fee of two per cent., does not rest upon a substantial basis. This money was never turned over to the county treasurer. No collection fee was earned. The city is not, by the judgment, required to pay more to the state than it was by the law required to pay to the county.

3. The trial court barred the recovery of the amount of fines collected in 1898 on the ground that the evidence showed the proceeds of such fines were expended by the city for court expenses during the year they were collected and before February 4, 1899. It held that a cause of action accrued to the state the moment the city used, for legitimate municipal expenses, the moneys collected. In this the court erred. No cause of action for conversion could have been maintained before the money became due and payable to the state from the county under the terms of the statute, sec. 1121, Stats. 1898, which was the first Monday of February following the year of collection, or the 6th of February, 1899. Until that time no duty devolved upon the county to pay, and it would not

follow that because during the year the city had used the proceeds of the fines for court purposes it would not turn over to the county for the state the amount due when it became payable. Under the evidence no cause of action accrued to the state until February 6, 1899, for the amount of fines collected in 1898. *State v. C. & N. W. R. Co.* 132 Wis. 345, 112 N. W. 515.

Upon the former appeal (*State v. Milwaukee,* 152 Wis. 228, 138 N. W. 1006) it was held that all claims accruing six years or more prior to the taking effect of ch. 1, Laws of 1905, were barred. Said chapter took effect February 4, 1905. The statute of limitations, therefore, had run on all claims accruing prior to February 4, 1899. In the former opinion that was inadvertently stated as February 1, 1899. Since no cause of action accrued to the state for fines collected in 1898 until February 6, 1899, it follows that a recovery for such fines was not barred, and the amount, $3,746, should have been included in the judgment.

4. Interest was allowed by the trial court on the amount found due only from January 11, 1912, the date of service of the third amended complaint, being the one upon which the action was tried. This was done on the theory that a demand was necessary to start the running of interest; that the service of demurrable complaints could not be deemed good demands; and that the service of a good complaint could not relate back to the service of the summons, which in this case was served January 4, 1907. Since we have reached the conclusion that no demand was required to start the running of interest, it will not be necessary to pass upon the two latter propositions of the trial judge. We however question their soundness.

Where no time of payment is fixed, or where a claim is unliquidated, or where the question of liability is so involved in doubt that there are reasonable grounds for believing that no liability exists, a demand is, in the absence of peculiar equitable considerations, necessary to set interest running.

*Marsh v. Fraser,* 37 Wis. 149; *Gammon v. Abrams,* 53 Wis. 323; 10 N. W. 479; *Tucker v. Grover,* 60 Wis. 240, 19 N. W. 62; *Farr v. Semple,* 81 Wis. 230, 51 N. W. 319; *Ryan D. Co. v. Hvambsahl,* 92 Wis. 62, 65 N. W. 873; *Laycock v. Parker,* 103 Wis. 161, 79 N. W. 327; *State ex rel. Att'y Gen. v. N. P. R. Co.* 157 Wis. 73, 99, 147 N. W. 219. But where the time of payment is fixed by contract or by law and the amount to be paid is easily ascertainable and the duty to pay plain, no demand is necessary to start the running of interest, whether the claim be against an individual or a municipality. *Laycock v. Parker, supra; Land, L. & L. Co. v. Oneida Co.* 83 Wis. 649, 53 N. W. 491; *Travelers' Ins. Co. v. Fricke,* 99 Wis. 367, 375, 74 N. W. 372, 78 N. W. 407; *State v. McFetridge,* 84 Wis. 473, 530, 531, 54 N. W. 1, 998. In the latter case it was held that interest on sums due from the state treasurer was properly computed from the date of expiration of his office, for that fixed the time when it became his duty to turn the money over to his successor in office. In the present case the law fixed the time when the money should have been paid to the state. That it was not so paid was due to the fact that the city treasurer did not turn it over to the county treasurer, for we must assume the county treasurer would have performed his duty and paid it over to the state had he received it from the city treasurer. So it was the default of the city treasurer, which default the city made its own by using the funds with knowledge of their trust nature. The time of payment was fixed by statute— the duty to pay was imposed by the organic law of the state, and the amount to be paid was easily ascertainable. Under such circumstances there would have to be equitable considerations of an imperative nature in favor of the debtor to justify a court in refusing to grant interest from the time payment should have been made. It is urged that the state for over fifty years has slept upon its rights and acquiesced in nonpayment, and that it ought not now to recover the

money with interest from the date when the payments should have been made. This is true, but it must be remembered that the state is a *quasi*-trustee of these funds, which belong to the school fund, and that laches on the part of a trustee does not always operate as effectively against a *cestui que trust* as does laches of an individual against himself. Moreover, the record shows that the *City of Milwaukee,* as is claimed, has from 1859 to 1898, inclusive, neglected to pay over the proceeds of any fines collected, aggregating without interest over $100,000, a recovery of which is barred by the statute of limitations. So if we were to apply equitable considerations to the case they would not weigh in favor of the debtor. Sound public policy and justice alike demand that where an individual or a municipality intentionally withholds the payment of funds required by law to be paid to the state or a municipality at certain specified times, the individual or municipality guilty of such withholding should be made to respond by paying the principal and interest thereon from the time payment should have been made.

Allowing a recovery for the fines collected in 1898 and computing interest on the sums collected from the time they became payable, which in 1899 was the first Monday of February and in the subsequent years the third Monday of February, we reach the following result:

| Amount due. | When due. | Int. to Oct. 27, 1914. | Total. |
|---|---|---|---|
| $3,746 | Feb.  6, 1899 | $3,383 24 | $7,129 24 |
| 4,062 | "  19, 1900 | 3,416 23 | 7,478 23 |
| 3,761 | "  18, 1901 | 2,937 93 | 6,698 93 |
| 5,953 | "  17, 1902 | 4,294 12 | 10,247 12 |
| 7,342 | "  16, 1903 | 4,856 74 | 12,198 74 |
| 9,049 | "  15, 1904 | 5,444 48 | 14,493 48 |
| 8,095 | "  20, 1905 | 4,378 05 | 12,473 05 |
| 12,124 | "  19, 1906 | 5,831 65 | 17,955 65 |
| 16,278 | "  18, 1907 | 6,855 34 | 23,133 34 |
| 11,286 | "  17, 1908 | 4,078 02 | 15,364 02 |
| 13,758 | "  15, 1909 | 4,150 35 | 17,908 35 |

Total amount due October 27, 1914.................$145,080 15

The circuit court allowed judgment in the sum of $102,697.68 damages and $46.22 costs. The judgment is

modified by allowing damages in the sum of $145,080.15 as of October 27, 1914, and as so modified is affirmed.

*By the Court.*—As against the state the city will take nothing on its appeal. As against the county the judgment is reversed, and the cause remanded for an accounting as indicated in the opinion, with costs in favor of the city.

Upon the appeal of the state the judgment is modified as indicated in the opinion and affirmed as modified, with costs against the city.