SCHLESINGER, Plaintiff, vs. THE STATE, Defendant.
[Three cases.]
MacLAREN, Plaintiff, vs. THE STATE, Defendant.

*February 11—March 6, 1928.*

*Taxation: Recovery of interest on taxes unlawfully collected: Source of right to take interest: Inheritance tax refunds: Percentage retained by county: Action against sovereign state.*

1. Sub. (2), sec. 72.08, Stats., providing for a refund of inheritance taxes erroneously paid into the state treasury, being silent as to the payment of interest on the sum refunded, does not imply that interest should be paid.    pp. 368, 369.

2. The mandate of the constitution (sec. 27, art. IV) that the legislature shall direct by law in what manner and in what courts suits may be brought against the state is not self-executing. p. 369.

3. At common law the taking of interest constituted usury, and the origin of the right to collect interest is in statutory enactments; and since a sovereign state cannot be sued in its own courts unless its consent is given by law, a state is not liable to pay interest on taxes illegally collected, in the absence of a statute imposing that liability.    pp. 371, 373.

4. Where, under sub. (3), sec. 72.01, Stats. 1921, inheritance taxes had been collected and the county had retained its percentage as provided in sec. 72.20, it is *held*, in an action against the state for the refund of the tax paid after the 1921 statute had been declared unconstitutional, that the county, and not the state, must refund the percentage of tax retained by the county. p. 374.

FOUR ORIGINAL ACTIONS against the state begun in this court on August 15, 1927, to recover inheritance taxes, with

interest, which were collected under an unconstitutional statute. The state demurred to each complaint on the ground that it did not state facts sufficient to constitute a cause of action. The four demurrers were argued together. *Demurrers sustained.*

Sub. (3) of sec. 72.01 of the Statutes of 1921 provided that all transfers of property within six years prior to death which were in the nature of a distribution of estate, if made without adequate valuable consideration, should be construed to have been made in contemplation of death and therefore to be subject to inheritance tax. This statute was declared by the supreme court of the United States to be in conflict with the federal constitution in that it denied equal protection of the laws. *Schlesinger v. Wisconsin,* 270 U. S. 230, 46 Sup. Ct. 260, 70 Lawy. Ed. 557.

Thereafter the state refunded the entire amount of the inheritance tax collected under this void law, less the seven and one-half per cent. which the statute permits the county to retain. The county refunded all but a small portion of the seven and one-half per cent. retained by it. All such refunds were made and accepted upon the express condition that the acceptance of such refunds should not prejudice the right of those receiving the refund to assert their claim to collect the balance of the illegal tax paid, together with interest upon the whole sum paid.

Claims against the state were filed with the legislature, which refused to allow the same. These actions were thereafter begun pursuant to the provisions of ch. 285 of the Statutes.

For the plaintiffs there were briefs by *Fawsett & Shea,* attorneys, and *Charles F. Fawsett,* of counsel, all of Milwaukee, and oral argument by *Charles F. Fawsett.*

For the defendant there was a brief by the *Attorney General* and *Franklin E. Bump,* assistant attorney general, and oral argument by *Mr. Bump.*

STEVENS, J.   (1) The chief question argued is the right to recover interest from the state.

Sub. (2) of sec. 72.08 of the Statutes provides that when any inheritance tax "shall have been paid erroneously into the state treasury, it shall be lawful for the state treasurer upon receiving a transcript from the county court record showing the facts to refund the amount of such erroneous or illegal payment." It will be noted that the statute does not authorize the payment of interest upon the amount refunded.

The great weight of authority on this question supports the rule established by the supreme court of the United States and by the English court of appeals that "interest, when not stipulated for by contract, or authorized by statute, . . . is not to be awarded against a sovereign government, unless its consent to pay interest has been manifested by an act of its legislature, or by a lawful contract of its executive officers. . . . Sir George Jessel, Master of the Rolls, speaking for the court of appeals, summed up the law of England in this short judgment: 'There is no ground for charging the crown with interest. Interest is only payable by statute or by contract." *U. S. v. North Carolina,* 136 U. S. 211, 216, 10 Sup. Ct. 920, 922, 34 Lawy. Ed. 336, 338. See, also, *In re Gosman,* L. R. 17 Ch. Div. 771, 772. Among the many cases that sustain this rule are *Antero Reservoir Co. v. Board of Comm.* 75 Colo. 131, 225 Pac. 269, 271; *Eaton v. St. Louis R. Co.* 122 Okla. 143, 251 Pac. 1032, 1039; *Spencer v. Los Angeles,* 180 Cal. 103, 115, 179 Pac. 163; *Ohio v. Board of Public Works,* 36 Ohio St. 409, 415; *Garland County v. Hot Spring County,* 68 Ark. 83, 93, 56 S. W. 836; *Peterson v. State,* 114 Neb. 612, 209 N. W. 221, 224; *Procter & Gamble Co. v. Sherman,* 2 Fed. (2d) 165, 166; *Southern California Co. v. Hopkins,* 13 Fed. (2d) 814, 820; *Board of County Comm'rs v. Kaul,* 77 Kan. 717, 96 Pac. 45, 17 L. R. A. N. s. 552, 557, and note. See, also, 3 Cooley, Taxation (4th ed.) § 1308.

"The rule applies as well to a sovereign state as to the national government." *Seton v. Hoyt,* 34 Oreg. 266, 55 Pac. 967, 43 L. R. A. 634, 635.

When a tax-refund statute is silent as to interest, it does not imply that interest should be paid. "On the contrary, the intention thereby disclosed is in denial of interest under it." *Kaemmerling v. State,* 81 N. H. 405, 406, 128 Atl. 6, 7. Such a statute "plainly indicates that interest is not recoverable." *Antero Reservoir Co. v. Board of Comm'rs,* 75 Colo. 131, 225 Pac. 269, 271. "If the legislature had intended to provide for the payment of interest on taxes illegally collected, when refund was made, it would have said so in unequivocal language." *Home Savings Bank v. Morris,* 141 Iowa, 560, 562, 120 N. W. 100, 101.

"A statute which in general terms requires the payment of interest does not apply to the state or county unless it expressly so provides. . . . There being no express reference to the state or county, they are by implication excepted from the operation of the general rule." *Salthouse v. Board of Comm'rs,* 115 Kan. 668, 673, 224 Pac. 70, 73; *Clay County v. Chickasaw County,* 64 Miss. 534, 544, 1 South. 753; *Savings & Loan Soc. v. San Francisco,* 131 Cal. 356, 363, 63 Pac. 665. "A sovereign is not bound by the words of a statute unless it is expressly named." *Seton v. Hoyt,* 34 Oreg. 266, 55 Pac. 967, 43 L. R. A. 634, 635.

The cases that have just been cited are based upon the universally recognized rule that a sovereign state cannot be sued in its own courts, unless its consent is given by law. The mandate of the constitution that "the legislature shall direct by law in what manner and in what courts suits may be brought against the state" (art. IV, sec. 27) "is not self-executing, and manifestly was not so intended. Otherwise, the mandate would have been to the courts instead of the legislature, and the consent of the state to be sued for the same causes which would support actions against individual citizens would have been expressly given." *Chicago,*

*M. & St. P. R. Co. v. State,* 53 Wis. 509, 513, 10 N. W. 560.

While the overwhelming weight of authority sustains the rule that interest cannot be allowed upon taxes that were illegally collected, in the absence of a statute providing for interest, there are few jurisdictions where the contrary rule has been adopted. With a single exception, none of these cases, so far as we have found them, are against the state. None of these cases discuss the rule that the state is not liable to pay interest in the absence of a contract or a statute imposing that liability. These courts dispose of the matter without further discussion than to say that "justice requires" the payment of interest (*Boston & M. R. Co. v. State,* 63 N. H. 571, 573, 4 Atl. 571; *Grand Rapids v. Blakely,* 40 Mich. 367, 370), or that "we see no reason why" a governmental agency "should not be subjected" to interest the same as an individual. *County of Galveston v. Galveston Gas Co.* 72 Tex. 509, 519, 10 S. W. 583; *Southern R. Co. v. City Council,* 49 S. C. 449, 451, 27 S. E. 652.

The only case which adopts this minority rule that does not treat the right to recover interest as a mere incidental matter is *In re O'Berry,* 179 N. Y. 285, 72 N. E. 109, 110. The court there relied upon a general statute that required illegal taxes on real and personal property to be refunded with interest, which was held "to express the general policy of the state as to the refunding of taxes improperly collected," thereby bringing the case within the rule that interest is not allowed upon refunded taxes unless authorized by statute. But the court also based its decision upon the proposition that justice to the estates of the dead requires the state to make the party paying the refunded tax "good, just as an individual would under like circumstances." Thus we see that the court bases its decision on both of the conflicting rules discussed above. The rule of this case was abrogated by legislative enactment in New York.

The inherent vice in the cases that hold the state liable to pay interest in the absence of a statute or contract imposing that liability is in the assumption that the taxpayer "and the government stand upon an equality with respect to interest. The truth is that in its dealings with individuals public policy demands that the government should occupy an apparently favored position. It may sue, but, except by its own consent, cannot be sued." *U. S. v. Verdier,* 164 U. S. 213, 218, 219, 17 Sup. Ct. 42, 44, 41 Lawy. Ed. 407, 409.

There is the same confusion in the Wisconsin cases that is found in the decisions elsewhere, due doubtless to the fact that "the question of interest is one much more often passed upon than carefully considered by courts. It is usually presented only incidentally to much more important issues, and often decided one way or the other at the close of exhaustive investigation of the other questions, and with the perhaps unconscious feeling that it is not of sufficient magnitude to justify further serious labor." *Laycock v. Parker,* 103 Wis. 161, 178, 79 N. W. 327. This is illustrated by the early cases of *Norton v. Supervisors,* 13 Wis. 611, and *Barden v. Supervisors,* 33 Wis. 445, where a statute expressly provided that taxes illegally collected should be refunded with interest. Yet the court in both of these cases held, without any discussion of the authorities or of the reasons for the rule, that the same result would follow without any statute "by an application of the general principle that money paid for a consideration which fails may be recovered back." *Norton v. Supervisors,* 13 Wis. 611, 613.

The court erroneously assumed in *Barden v. Supervisors,* 33 Wis. 445, 451, that the taxpayer "was entitled to recover the money paid, and interest, at common law." At common law the terms "usury" and "interest" were synonymous. "By common law, the taking of interest was usury, and a punishable offense. This being the normal condition of the

law for a long time, a statute finally was passed in England giving the creditor permission to charge a certain limited percentage of interest, the taking of a greater percentage being still left as a punishable offense." *Harmanson v. Wilson,* 1 Hughes, 207, 230. Under the common law those who accepted interest were disciplined in life by the church and in death by the king, who forfeited their goods and lands. 8 Holdsworth's History of English Law, 102. One of the early law books published in the English language lamented the fact that usurers "after their deaths are suffered to be buried in sanctuaries." Mirrour of Justices, 248.

Under the common law of England "all contracts for any quantity of interest, however small and reasonable," were void. *Houghton v. Page,* 2 N. H. 42, 44. The origin of the right to collect interest is to be found entirely in statutory enactments, by which the right to collect interest "was converted from a crime into a statutory privilege." *Harmanson v. Wilson,* 1 Hughes, 207, 227. "At the common law interest was allowed in no case. . . . It is the creature of the statute alone, and to it we must look for authority for its allowance. If not authorized by the statute it cannot be recovered." *Pekin v. Reynolds,* 31 Ill. 529, 532, 83 Am. Dec. 244, 245.

This court applied the rule of the common law in *Bigelow v. Washburn,* 98 Wis. 553, 557, 74 N. W. 362, and in *Mueller v. Cavour,* 107 Wis. 599, 605, 83 N. W. 944, where it refused to allow interest on town orders because the common-law rule that such obligations did not bear interest had not been changed by statute.

On the other hand, the Wisconsin court has held the state and its governmental subdivisions liable to pay interest where there was no statutory provision imposing that liability, because the court thought it to be "a violation of no sound principle" to require the state to pay interest (*Shipman v. State,* 44 Wis. 458, 461) ; because the court could

perceive "no good reason why such interest was not properly allowed" (*Land, Log & Lumber Co. v. Oneida County,* 83 Wis. 649, 658, 53 N. W. 491); or because "sound public policy and justice alike demand" that a municipality should be subject to the same liability to pay interest as is an individual that withholds the payment of money justly due. *State v. Milwaukee,* 158 Wis. 564, 575, 149 N. W. 579.

It will be noted that these cases, like those cited from other jurisdictions which adopt the same rule, do not discuss the fundamental principles that determine the right to collect interest from the sovereign. These cases "passed upon" the question of the right to collect interest of the state or of a governmental subdivision thereof, but that question was not "carefully considered" in these opinions, to adopt the language used by Mr. Justice DODGE in the opinion of the court in *Laycock v. Parker,* 103 Wis. 161, 178, 79 N. W. 327.

The only case in Wisconsin that discusses the authorities and considers the fundamental rules that determine the liability of the state and of its governmental subdivisions to pay interest repudiates the rule that the state and these subdivisions are "under the same liability to pay interest . . . as is a natural person under similar circumstances." *Reichert v. Milwaukee County,* 159 Wis. 25, 32, 150 N. W. 401. This is the last expression of our court upon this question. It is in accord with the rules of law established by the great weight of authority everywhere. Applying the principles of that case to the question presented in this case, it leads to the conclusion that the state is not liable to pay interest on taxes illegally collected in the absence of a statute imposing that liability.

(2) The complaint alleges that seven and one-half per cent. of the amounts collected from each claimant was retained by the county treasurer of Milwaukee county as provided in sec. 72.20 of the Statutes, which requires this amount to be retained "for the use of the county." The

allegations of the complaint show that the state treasurer has refunded to the claimants every cent that came to the state out of the illegal inheritance tax paid by them. It also appears that the county treasurer of Milwaukee county has made a refund to each claimant. But, for some reason which does not appear from the complaint, the refund made by the county is in each case a few hundred dollars less than the amount retained by the county for its own use. These sums still retained by the county do not belong to the state. They never came into the state treasury. They belong to the county. The county, not the state, must refund these amounts.

Claimants seemed to have recognized that the county is liable to refund the balance still due, because they allege that they began actions against the county to recover these balances. Apparently* these actions are still pending, at least the complaint does not allege that they have been terminated. It follows that the complaint states no cause of action against the state.

The question of voluntary payment discussed in *Beck v. State,* 196 Wis. ——, 219 N. W. 197 (decided herewith), is not involved in these cases. Sec. 72.08 of the Statutes permits those who are liable to pay inheritance taxes to estimate the amount of the tax and to voluntarily pay it to the county before the tax has been finally determined. If the amount of the tax, so estimated and paid in advance, is found to be either erroneous or illegal, the taxpayer is entitled to a refund, provided that he applies for the same within the time fixed by this statute. In order to give force and effect to this statute it must be construed to apply in cases where the payment was made voluntarily, provided always that the application for the refund is made within the year fixed by the statute. The claimants applied "within one year after the reversal or modification of the order fixing such tax" as required by the statute.

The demurrers to the several complaints are sustained. The plaintiffs may amend their complaints within twenty days from the date when this decision is filed. If the complaints are not amended within twenty days, judgments will be entered dismissing the actions. No costs will be taxed. The plaintiffs will pay the fees of the clerk of this court.

*By the Court.*—So ordered.