CITY OF MILWAUKEE, a municipal corporation, Plaintiff-Respondent, v. MILWAUKEE CIVIC DEVELOPMENTS, INC., a Wisconsin corporation, Defendant-Appellant.

*No. 545 (1974). Submitted on briefs February 4, 1976.—*
*Decided March 2, 1976.*
(Also reported in 239 N. W. 2d 44.)

650

For the appellant the cause was submitted on the briefs of *James G. Doyle, James A. Baxter* and *Schellinger & Doyle, S. C.* of Milwaukee.

For the respondent the cause was submitted on the brief of *James B. Brennan,* city attorney, and *Maurice L. Markey,* assistant city attorney.

HANLEY, J. The following issues are presented on this appeal:

1. Are the requested damages for increased costs and lost rents an incidental remedy to the principal equitable relief sought, and as such, is the claim filing requirement of sec. 62.25, Stats., inapplicable?

2. Is sec. 62.25, Stats., inapplicable to counterclaims responsive to the suit commenced by a political subdivision?

3. Was the sec. 62.25, Stats., requirement fulfilled by a stipulation between these parties which was approved by the common council?

4. May the city be estopped from asserting noncompliance with sec. 62.25, Stats., in this case?

5. Is sec. 62.25, Stats., applicable to the contingent claim for improvements?

*Claim merely incidental.*

For a claim against a political subdivision such as the city, a party must comply with sec. 62.25 (1), Stats.

"No action shall be maintained against a city upon a claim of any kind until the claimant shall first present his claim to the council and it is disallowed in whole or in part. Failure of the council to pass upon the claim within 90 days after presentation is a disallowance."

MCDI notes that case law in our state has held statutes of this character to be inapplicable to actions for equitable relief. *Davis v. Appleton* (1901), 109 Wis. 580, 587, 85 N. W. 515; *Madison v. Frank Lloyd Wright*

*Foundation* (1963), 20 Wis. 2d 361, 381, 122 N. W. 2d 409; *Geiger v. Calumet County* (1962), 18 Wis. 2d 151, 155, 118 N. W. 2d 197 (right of contribution). Describing its first and second counterclaims as requests for equitable relief, MCDI contends that no notice of claim need be filed for the "incidental" relief of the third counterclaim, citing *Carthew v. Platteville* (1914), 157 Wis. 322, 147 N. W. 375 and *Hasslinger v. Hartland* (1940), 234 Wis. 201, 290 N. W. 647.

The trial court was of the opinion that the damages requested in the third counterclaim were not a mere incident to a request for reformation. The city also takes the position here that the pleading of reformation is seriously deficient in detail such that a basis for the equitable relief is not established and thus no incidental relief may follow. Further argument is made that MCDI has at best stated allegations of a breach of contract.

MCDI has responded to the charges of inadequate pleading by contending it has provided a basis for reformation of the deed through mistake on its part and inequitable conduct on the part of the city. The inequitable conduct is argued as being alleged in the recitations that the city unreasonably refused to amend the deed and that it undertook other activity to frustrate MCDI's performance. While mutual mistake, or mistake by one party and fraud by another are recognized as bases for the relief of reformation of an instrument, *Findorff v. Findorff* (1957), 3 Wis. 2d 215, 224, 88 N. W. 2d 327, the fraud or inequitable conduct entitling such relief must exist at the time of execution of the instrument, not in some subsequent and distinct transaction. 66 Am. Jur. 2d, *Reformation of Instruments,* sec. 24 (1973). It is the failure of the instrument to express "at the time of the execution" the intent of one party and that same intent known by the other party who also knows the error in the instrument that justifies reformation. Restatement (Second) *Contracts,* sec. 505.

At best, the counterclaim may state a basis of mutual mistake. The deed, assuming it to be "reexecuted" at each alleged instance of contract renegotiation, may be seen as the product of mutual mistake by a failure to amend at that point. Further assuming that the pleading of MCDI is so efficacious, it still does not follow that the third counterclaim is in any way "incidental" to such relief. The reformation of an instrument relates back to the date of its execution in mistaken form. Courts may thereafter proceed to enter such relief as is appropriate in light of the reformed instrument. Thus, in normal actions at law for breach of contract, a necessary step in obtaining the damages on a breach (or in obtaining a specific performance) may be the preliminary reformation of the instrument. 76 C. J. S., *Reformation of Instruments,* sec. 87 (1952). The subsequent actions use the equitable relief of reformation as a tool to construct the proper basis for their administration; they are not "incidental" to the reformation.

It appears that the damages, from the allegations of the counterclaim, have been caused by actions which either compose a breach of contract or a breach of an implied promise of cooperation, which latter breach excuses nonperformance of a condition and allows damages for the harm resulting from noncooperation. Calamari, *Contracts,* sec. 165 (1970). The allegations may even embrace some theory of tortious misfeasance of a contractual duty. Quite clearly the damages are not merely incidental to a mutual mistake in execution of the deed. They are due to subsequent actions.

The counterclaims seem to request reformation and then seek damages at law for breach of the contract as so reformed. There is no specifically requested equitable relief from which such damages could "incidentally" flow.

There are statements in the brief of MCDI that the remedy of specific performance is "implicit within its

claim for reformation." Assertions that courts of equity may retain a case after reformation to employ incidental or additional relief, 76 C. J. S., *supra,* at sec. 876, are based on case law affirming that a court has the power to adjudicate actions seeking successive equitable or legal relief, and they do not stand for the proposition that a request for reformation permits a court to *sua sponte* apply specific performance. The requirement of a definite averment of the equitable relief sought was clearly met in such cases. *See, e.g., Holter v. Cozad* (1951), 124 Colo. 428, 238 Pac. 2d 190, citing *Froyd v. Schultz* (1913), 260 Ill. 268, 103 N. E. 220, 1914D Ann. Cas. 225 and *Atwood v. Mikeska* (1911), 29 Okla. 69, 115 Pac. 1011, 1917A L. R. A. 602; *Roberts v. Hummel* (1952), 69 Nev. 154, 243 Pac. 2d 248; *Smith v. Hornkohl* (1958), 166 Neb. 702, 90 N. W. 2d 347. Specific performance of a reformed instrument must be clearly pleaded. The counterclaims here for reformation and for damages on alleged contractual violations do not "imply" specific performance.

MCDI elected to file a counterclaim. We hold that where a money demand is separately and affirmatively pleaded as a separate cause of action, as in the instant action, sec. 62.25 (1), Stats., is applicable and must be complied with.

We recognize that the statute does not apply to claims for equitable "relief." In cases like *Hasslinger, supra,* the award of damages, even if specifically requested in the alternative if the specific performance be foreclosed on equitable grounds, is not the prime relief sought and is a merely alternative award that does not require a prior sec. 62.25, Stats., notice. The notice requirement is to allow the city to pay the claim without recourse to the expense of a suit. If a claimant is compelled to submit his merely alternative claim, payment by the city would foreclose the primary and perhaps

more equitable remedy. On the other hand, if the court finds that the equitable remedy of specific performance is not established but a legal cause of action is, the defending political subdivision may submit that no notice was given as to the alternative of purely legal remedy. A claimant, to protect all his options, should plead for the equitable remedy, the alternative equitable relief of damages if competing equitable circumstances bar the remedy, and the alternative legal remedy of contract damages for which notice has properly been given. The award of merely incidental damages when full equitable relief is granted, as in *Carthew* but not established in the pleadings here, still lies beyond the purposes of the notice of claims statute.

### Counterclaim not a claim.

An argument is made that the general application of sec. 62.25 (1), Stats., to counterclaims is contrary to the purposes of the statute. In *Patterman v. Whitewater* (1966), 32 Wis. 2d 350, 357, 145 N. W. 2d 705, this court reiterated: ". . . the objective of a filing of claim statute is to afford the municipality an opportunity to effect compromise without suit."

Where the counterclaim, as here, strikes directly at the primary subject of the litigation started by the city, such purpose of early compromise of claims is seen as abrogated. Notice is given to the city to allow it to settle without the expense of litigation, which has already been incurred.

There are several valid responses to the continued applicability of the notice of claims statute. Initially, a correct filing of a claim also serves the purpose of alerting the city financial officers of possible expenses, so appropriate review of the budget can be made for settlement or litigation allocations. Sec. 62.12 (8), Stats.

The affirmative act of a political subdivision in taking to the courts also does not preclude future settlement. In forcing potential claimants into action, the city may exercise more control over these usually unpredictable demands on the public funds, yet the obligation to file the notice required without exception by statute is not thereby relieved. The futility of filing in such circumstances is no more futile than the filing of any claim known to a city council which may have already formed an opinion against settlement. MCDI questions the efficacy of this statute, which is a question more properly directed to the legislature.

MCDI also cites case law that is argued as an exception to the "notice of claims" statutes. *State v. Milwaukee* (1911), 145 Wis. 131, 129 N. W. 1101, was an attempt by Milwaukee county to resist an action by the state against it and the city of Milwaukee for collection of criminal penalties imposed in their courts. Its defense was failure to comply with the notice of claim statute. The court found it inapplicable to the sovereign entity. In the subsequent action of *State v. Milwaukee* (1914), 158 Wis. 564, 149 N. W. 579, the city sought to charge the county for a share of the judgment which amounted to all criminal penalties which had been diverted to maintain the local courts rather than having been forwarded to the state. The state had achieved the judgment against the city for all the penalties collected and expended. This court found error in the failure of the trial court to allow the city to show that one-half of those fees were utilized in satisfying the joint obligation of the county in maintaining such courts. The court ordered a remand for accounting between the two parties. In regards to any conflict with the unfulfilled notice of claim statutes, it stated:

"When an action is properly begun the statutory requirement no longer attaches, but the court may take

an accounting and settle mutual claims, when that is necessary to a complete and final determination of all rights of the parties growing out of the primary subject of litigation." *Id.* at 572.

MCDI argues that a similar policy is available here.

It must be noted that the "rights . . . growing out of the primary subject of the litigation" in the *State Cases* concerned only the allocation and accounting in response to the plaintiff state's claim, the subject of litigation; the "rights" were not a controverting cause of action growing out of previous mutual relations, as here. The court in the *State Cases* found both political subdivisions subject to the suit by the state without a filed notice and further found that a trial error had been committed in not allowing proceedings which demonstrated that a portion of the judgment was the responsibility of the county. Rather than remand all three parties, the court allowed the city to proceed in an accounting against the county for a judgment without the normal notice required between them. It did so as an expedient manner of achieving the individual judgments that would have resulted had the state's case been correctly conducted, where no notice was required. As precedent, it is restricted solely to those unusual circumstances. The city appeared to have a claim against the county only because of the error in the earlier proceedings.

### Informal compliance and estoppel.

At one point in the lengthy history of this dispute, the parties sought to reconcile their differences. There were, however, substantial questions as to the ability of the city to effect a settlement. Apparently settlement proposals were twice worked out, each proposal expressly conditioned upon a declaratory judgment which would decide if the city could accept the compromise

presented. It was agreed that the declaratory judgment would have to fully answer certain issues in a specific fashion, including:

"(c) Is the consideration flowing to the city of Milwaukee from MCD under the stipulation, namely, the dismissal of a $7 million counterclaim and the construction of the structure sufficient to support the conveyance and the dismissal of the city's claims against MCD? Answer: Yes."

The common council approved such stipulation. It must be noted that this amended and restated stipulation further allowed the city to retain the right of final refusal of the proposals submitted after the judgment. Apparently the trial court refused to decide the questions presented. At any rate, no settlement was reached.

MCDI submits that the approved stipulation complied with all the material requirements of sec. 62.25 (1), Stats., as it identifies the parties, the controversy, and a specific dollar amount claimed. MCDI also asks that the city be estopped from asserting noncompliance.

The city contends that a suit commenced without compliance with sec. 62.25, Stats., may not be maintained once the issue of its statutory deficiency is raised. The issue is raised by the reply citing such deficiency. To allow claimants to commence actions and then file so as to allay the deficiency would circumvent the clear language and purpose of the statute. The action embodied in the third counterclaim was a nullity at the point of reply. MCDI admits that the issue was "raised" by the reply. It requests, however, that this court apply estoppel because of the unfair conduct of the city in bringing on the order to show cause at this late date, when compliance and a new action can no longer be attained. Estoppel has been rejected as a defense to the application of the statute. *Sambs v. Nowak* (1970), 47 Wis. 2d 158, 167, 177 N. W. 2d

144. MCDI intimates that the city should have filed a demurrer, as in *Foreway Express, Inc. v. Hilbert* (1966), 32 Wis. 2d 371, 145 N. W. 2d 668, or a motion for summary judgment, because MCDI would then still have had the opportunity to comply. When a demurrable ground does not appear on the face of the answer, the objection may be taken by reply. Sec. 263.18. The city specified the statutory deficiency by way of "affirmative defense" and "plea in abatement." Even assuming estoppel could be applied, there is absolutely no basis for MCDI to be afforded estoppel when it was timely apprised of the issue and chose to rely on its view of the law rather than avail itself of more prudent alternatives. One route would have been to proceed by filing a claim and thereafter commencing a separate action with a view to consolidation with the city's suit. A demurrer on its part to the reply was also available. Sec. 263.22. The stipulation on the facts of the claim was untimely as a notice and cannot be saved by estoppel.

*Counterclaim for improvements.*

The city characterizes the fourth counterclaim as a "fully ripened money demand which was not inchoate or contingent," which is erroneous. MCDI asserts title to the property and seeks to be recompensed for the alleged improvements on the land *only* in the event the city is decreed as the owner.

Most of the argument on the fourth counterclaim concerns whether it was an equitable action. The trial court did not dismiss the fourth counterclaim because it believed it of "equitable origin." MCDI calls it an implied contract action of *quantum meruit*, which originated in the common-law count of assumpsit. *Estate of Voss* (1962), 20 Wis. 2d 238, 121 N. W. 2d 744. Although it partakes of equity's influence in its guiding principle of

unjust enrichment, it is a legal remedy to which sec. 62.25 (1), Stats., is meant to apply.

The significant issue is the contingent nature of the fourth counterclaim. It is not in fact a true counterclaim that could stand as an independent cause of action. The general law of recoupment and set-off does not embrace contingent claims either. 80 C. J. S., *Set-off and Counterclaim,* sec. 28 (1953) ; 20 Am. Jur. 2d, *Counterclaim, Recoupment and Setoff,* sec. 58 (1965). The fourth counterclaim, at the point of time of the answer, fails to state a cause of action. It is entirely premised upon conditions that avowedly do not exist.

MCDI obviously could not proceed on this "claim" as an independent action. It also cannot be used as for defensive mitigation purposes. An appropriate and clearer example of this inadequacy, as used in 80 C. J. S., *supra,* would be an attempt to counter a lawsuit with a responsive action for malicious prosecution, which cannot be maintained without a judgment in that defendant's favor. Likewise, the suit embraced by the fourth counterclaim does not arise until a judgment is rendered against MCDI.

Although notions of judicial economy and reduction of litigation might compel that the same trier of fact hear this claim if the contingency occurs, as in cases of indemnification, there is no need to hear it prior to any judgment. Likewise, those reasons of economy cannot excuse noncompliance with the notice statute.

The city, for whatever reason, chose not to demur. That inaction does not require the trial court to entertain the claim until the contingency occurs. For a cause of action then existing, the city's previous raising of the issue of sec. 62.25 (1), Stats., noncompliance becomes effective and the action must be dismissed at that point. Since the cause of action arises at that point, MCDI will

have ample time to undertake the necessary compliance and reinstitute the action.

The order of the trial court presently denying the city's particular motion to dismiss as to the fourth counterclaim need not be modified here.

*By the Court.*—Orders affirmed.