(No. 55910.—

SHELL OIL COMPANY *et al.*, Appellees, v. THE DEPARTMENT OF REVENUE *et al.*, Appellants.

*Opinion filed March 25, 1983.—Rehearing denied May 27, 1983.*

542

Tyrone C. Fahner, Attorney General, of Springfield (Paul J. Bargiel, Special Assistant Attorney General, of

Doss, Puchalski, Keenan & Bargiel, Ltd., of Chicago, of counsel), for appellants.

Franklin A. Nachman, of Conklin & Adler, Ltd., and Michael J. Koenigsknecht, of Gardner, Carton & Douglas, all of Chicago, for appellees Shell Oil Company and American Airlines, Inc.

Arnold T. Aikens and Hans U. Stucki, of Chicago, for appellee United Air Lines, Inc.

JUSTICE WARD delivered the opinion of the court:

The question on this appeal is whether a taxpayer whose protest has been upheld is entitled to interest income earned on the erroneously assessed taxes that by order of court were paid into a protest fund and held by the State Treasurer as trustee. We granted the plaintiffs' petitions for direct appeal under our Rule 302(b) (73 Ill. 2d R. 302(b)).

In 1979, the Department of Revenue, pursuant to statutory provision (Ill. Rev. Stat. 1979, ch. 34, par. 409.1), assessed county retail occupation taxes against Shell Oil Company (Shell) on sales of jet fuel by Shell to American Airlines in 1974, 1975, and 1976. The total tax assessment was in the amount of $1,182,535, and accrued interest of $552,901 was claimed. The Department's assessment against Shell for sales of fuel in the same years to United Airlines was $1,996,695 in taxes, and $923,895 were claimed as interest. The two airlines, pursuant to provisions in their contracts with Shell, paid the taxes and interest under protest. Shell, American Airlines and United Airlines brought an action on September 26, 1979, against the Department of Revenue, the Director of Revenue and the State Treasurer to recover the taxes paid under protest, pursuant to "An Act in relation to the payment and disposition of moneys received by officers and employees of the State ***" (Ill. Rev. Stat. 1979, ch. 127, par. 170 *et seq.*) (the Protest

Monies Act). On the same day the circuit court of Cook County entered orders enjoining the defendants from depositing any of the protest funds into the State Treasury. The defendants did not file answers to the complaints until June 4, 1980, and the two cases were consolidated on September 28, 1980. On February 6, 1981, the circuit court held for the plaintiffs and granted summary judgment against the defendants and ordered that the monies paid under protest be refunded. No appeal was taken by the defendants.

While these actions were pending in the circuit court, interest was earned on the protest funds through investment by the State Treasurer, who, as trustee, was holding the monies in special funds. The Treasurer, however, instead of crediting the interest earned to the protest funds, deposited the interest in the State's general revenue fund. When the circuit court entered summary judgment in favor of the plaintiffs, they laid claim to the interest which had been earned on the protest funds during the pendency of their actions. On August 13, 1981, the court held that the plaintiffs were entitled to the interest income earned. Six days later the trial court entered orders directing the defendants to issue credit memoranda in favor of the taxpayers for $244,563.44, the interest earned on the American Airlines protest fund and for $411,579.29, the interest earned on the United Airlines protest fund. The Department of Revenue filed notices of appeal to the appellate court, and we granted the plaintiffs' petitions for direct appeal to this court under Rule 302(b) (73 Ill. 2d R. 302(b)).

A taxpayer who questions the correctness of an assessment of retailers' occupation tax may (1) withhold payment of the tax and receive an administrative hearing following receipt of a notice of tax liability from the Department of Revenue; or (2) pay the tax, file a claim for credit or refund, and have an administrative hearing

after protesting the Department's notice of tentative determination of claim (see Ill. Rev. Stat. 1979, ch. 120, par. 440 *et seq.* (the Retailers' Occupation Tax Act)); or (3) pay the tax under protest pursuant to the Protest Monies Act and have the circuit court pass upon the protest (*Chicago & Illinois Midland Ry. Co. v. Department of Revenue* (1976), 63 Ill. 2d 474). (See Chester, *View of the Taxpayer's Attorney on Revenue Litigation,* 54 Chi. B. Rec. 173 (1973).) The taxpayer here chose the third option, paying the tax under protest. The plaintiffs succeeded in their protest actions and are now defending the circuit court's award of the interest earned on the protest funds.

Interest is not normally recoverable, in the absence of a statute or an agreement providing for it. (*Lakefront Realty Corp. v. Lorenz* (1960), 19 Ill. 2d 415.) In *Lakefront Realty,* this court considered for the first time whether interest should be allowed in the case of tax refunds. The court observed that though in some jurisdictions it has been held that, where a taxpayer is entitled to a refund because of an overpayment of taxes, he is entitled also to interest on the refund, it would not allow interest on tax-refund payments in the absence of a statute expressly providing for it. The court stated that "interest, being a creature of statute, is recoverable only by statute or contract, and *** a tax collector, being a mere trustee of public funds collected for specific purposes, has no money to pay interest in the absence of statutory authority to establish a fund for that purpose." (19 Ill. 2d 415, 423.) Had the taxes here been paid under the second option described above and had the protest been upheld, the taxpayer would be entitled to statutory interest of 1/2 of 1% per month under section 6 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 445.) The Protest Monies Act, however, does not have a provision for interest on a refund of protested

taxes. That the legislature did not include a provision for interest, the defendants argue, shows an intent to deny recovery of interest to a taxpayer who has been successful in a protest action under the Protest Monies Act. Too, it is argued that the allowance of interest would constitute a money judgment against the State in violation of its sovereign immunity.

We do not disagree with the observation that a taxpayer who has successfully challenged an assessment of taxes by way of the Protest Monies Act is not entitled to recover interest on the protest funds simply as a matter of course. We consider, however, that the taxpayer here is entitled to the interest earned by investment of the protest funds.

The circumstances here differ from those in *Lakefront Realty* in that interest income was actually earned on the protest funds. Payment of the interest income to the successful taxpayer does not present the problem in *Lakefront Realty*, where no money was available to pay interest on the fund. The case here is not one in which the taxpayer is requesting interest on the protest fund as a matter of course. The taxpayer is simply seeking the income earned from money it was determined it had no legal duty to pay as taxes. The interest income, as it accrued, belonged neither to the State nor to the county for whose benefit the taxes were collected. The Treasurer's authority, as trustee, to invest these funds did not affect the ownership of the funds or entitle him to keep the interest so earned. *Cf. Town of City of Peoria v. O'Connor* (1981), 85 Ill. 2d 195, 207.

Even in the absence of statutory authorization, a court may award interest in a proceeding against the State if equitable considerations warrant it, as long as the effect of doing so does not constitute the entering of a money judgment against the State. (*City of Springfield v. Allphin* (1980), 82 Ill. 2d 571, 579.) Whether an award

of interest would be a money judgment against the State can be determined by examining the source from which the interest money would be paid. In *Campbell v. Department of Public Aid* (1975), 61 Ill. 2d 1, this court held that the appellate court's order requiring the Department of Public Aid to make retroactive payments to the plaintiff, even though the appropriations out of which the payments would be payable had lapsed, was a monetary judgment against the State and therefore prohibited. In *Campbell* it was noted that the record contained "nothing relevant to the availability of funds with which to pay the sums ordered paid." (61 Ill. 2d 1, 6.) The record here, however, discloses that the interest income earned by the Treasurer is available to pay the taxpayer. An award of the interest income will not result in a money judgment against the State, since the Treasurer will pay the interest generated in his capacity as a trustee. Too, the ultimate source of the interest income is the bank or other entity with which the fund was invested.

At no time did the protest fund become the property of the State. The Treasurer acted merely as trustee of the protest fund (see Ill. Rev. Stat. 1979, ch. 127, par. 172) and, as such, he is not entitled to any income or fee for his services absent statutory authorization. (See Ill. Rev. Stat. 1979, ch. 24, par. 8—11—1.) The protest action was instituted simply to determine whether the county or the taxpayer was entitled to the funds paid under protest. As previously mentioned, the interest income never belonged to the State. The Treasurer could not deny the taxpayer the right to that income by transferring it to the State's general revenue fund.

In addition, there is statutory authority for the payment of interest income from a protest fund to a taxpayer. Section 2a of the Protest Monies Act (Ill. Rev. Stat. 1979, ch. 127, par. 172) requires the Treasurer to

place money paid under protest in a "special fund to be known as the protest fund." Section 1 of "An Act relating to certain investments of public funds by public agencies" (Ill. Rev. Stat. 1979, ch. 85, par. 901) described special funds as "public funds" for purposes of the Act. Section 2 states, in part:

"All earnings accruing on any investments or deposits made pursuant to the provisions of this Act shall be credited to the public agency by or for which such investments or deposits were made, except where by specific statutory provisions such earnings are directed to be credited to and paid to a particular fund." (Ill. Rev. Stat. 1979, ch. 85, par. 902.)

Specific statutory direction to credit accrued earnings to the special protest fund appears in section 2 of "An Act in relation to state moneys" (Ill. Rev. Stat. 1979, ch. 130, par. 21), where it is provided:

"All interest received or paid on account of money in the State treasury belonging to or for the use of the State so deposited in banks, shall be the property of the State of Illinois. If any moneys held in special funds in the State treasury, not belonging to the State, shall be deposited in banks pursuant to the provisions of this Act, the interest received thereon shall be credited to the special fund so deposited."

Although it does not affect our decision here, we note that the legislature has recently amended section 194 of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 675) to provide for the payment of interest in cases of refunded real property taxes paid under protest. The amendment reads:

"Such amounts paid under protest and withheld from distribution shall be deposited by the collector in interest bearing accounts. If the final order of a court on the protest results in a payment to the taxpayer of all or a part of the taxes paid under protest and withheld, all or a proportional share of such interest earned during the pendency of the protest by the amount repaid to the taxpay-

ers shall also be paid to the taxpayer. If the final order of a court on the protest results in a payment to the taxing districts of all or a part of the taxes paid under protest and withheld, the interest earned during the pendency of the protest by such taxes paid to the taxing districts shall be paid into the county treasury." Ill. Rev. Stat. 1981, ch. 120, par. 675.

On this appeal, the defendants have for the first time questioned the authority of the circuit court to order the issuance of credit memoranda in favor of the plaintiffs in amounts equal to the interest earned on the protest funds. The record contains an affidavit of one of the plaintiffs' attorneys which states that the assistant Attorney General representing the defendants in the circuit court told him that the defendants would not propose any language for the order providing for the payment of interest or suggest any means for payment.

It is axiomatic that questions not raised in the trial court are waived and may not be raised for the first time on appeal. (*Snow v. Dixon* (1977), 66 Ill. 2d 443, 453; *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147.) The failure of the defendants to question the order for the issuance of credit memoranda was a waiver of any objection to the court's authority to enter the order. We would note parenthetically that a trial court possesses wide discretion in fashioning an appropriate remedy in revenue cases. *City of Springfield v. Allphin* (1978), 74 Ill. 2d 117.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

CLARK and MORAN, JJ., took no part in the consideration or decision of this case.