GERALD J. MANNIX, Indiv. and as Adm'r of the Estate of Ercel C. De-Force, Deceased, and on Behalf of All Heirs and Legatees of the Estate of Ercel C. DeForce, Deceased, and on Behalf of All Persons Similarly Situated, Plaintiff-Appellant, v. JAMES H. DONNEWALD, Treasurer, Defendant-Appellee.

First District (3rd Division)   No. 1—87—2865

Opinion filed August 16, 1989.

---

*Justice McNamara participated in this opinion prior to his assignment to the sixth division.

474

Chadwell & Kayser, Ltd., of Chicago (Julia D. Mannix and Bruce C. Howard, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert W. Cushing, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE CERDA delivered the opinion of the court:
The plaintiff, individually and as administrator of the estate of Er-

cel C. DeForce, deceased, filed this class action suit after receiving a tax refund to recover interest earned on estate funds deposited with the State Treasurer pending determination by the circuit court of the actual amount of inheritance tax due. The parties filed cross-motions for summary judgment, and the plaintiff appeals from the trial court's order granting summary judgment in favor of the defendant. There are no questions of fact, and the sole issue presented for review is whether an estate is entitled to the interest earned on funds deposited with the State Treasurer pending a determination of the amount of inheritance taxes due, when the amount determined to be due is less than the amount deposited, and the estate receives a refund. Certification of the class was continued pending resolution of the parties' cross-motions for summary judgment.

Ercel C. DeForce died on September 25, 1977. The inheritance taxes on her estate accrued and became due on the date of her death pursuant to section 3 of the Inheritance and Transfer Tax Law (Act) (Ill. Rev. Stat. 1977, ch. 120, par. 377). Section 3 provides that the State will charge interest at the rate of 7% per annum for such time as the taxes remain unpaid. Because the amount of the inheritance taxes due were unknown, the taxes had to be determined in the circuit court. (Ill. Rev. Stat. 1977, ch. 120,' par. 385.) Section 3 contains a provision, however, providing that the charging of interest pending determination of the amount of taxes due can be avoided if a deposit is made with the county treasurer. (Ill. Rev. Stat. 1977, ch. 120, par. 377(c).) That provision provides in pertinent part:

> "All taxes imposed by this Act, unless otherwise herein provided for, shall accrue and be due and payable, at the death of the decedent. Interest at the rate of 7% per annum shall be charged and collected for such time as the tax is not paid; except *** (c) where prior to the final determination of the tax a deposit is made with the County Treasurer to be applied to the payment of the tax when finally determined ***." (Ill. Rev. Stat. 1977, ch. 120, par. 377(c).)

The plaintiff accordingly deposited $75,000 with the county treasurer on September 25, 1978. That deposit was remitted to the State Treasurer in accordance with the Act. On August 20, 1981, four years later, the circuit court determined the estate's inheritance tax to be $33,584.75. The plaintiff subsequently received a refund of $41,451.25 from his deposit. The State Treasurer, however, refused to credit to the estate the interest earned on the amount refunded. Answers to interrogatories reveal that between 1978 and 1986 over $27 million in excess deposits were refunded without interest. In granting the

defendant's motion for summary judgment, the trial court, relying on *Lakefront Realty Corp. v. Lorenz* (1960), 19 Ill. 2d 415, 167 N.E.2d 236, held that the State Treasurer is not obligated to pay interest to the estate in the absence of statutory authorization.

In *Lakefront Realty Corp. v. Lorenz,* our supreme court addressed for the first time the question of whether a taxpayer is entitled to interest on a tax refund. The court held that the taxpayer was not entitled to the interest on the grounds that interest, being a creature of statute or contract, is not recoverable without statutory authorization, and in practice, the tax collector has no money to pay interest in the absence of a statute authorizing him to establish a fund for that purpose. (*Lakefront Realty Corp.,* 19 Ill. 2d at 423.) This holding has repeatedly been reaffirmed. (See *City of Springfield v. Allphin* (1980), 82 Ill. 2d 571, 576, 413 N.E.2d 394; *People v. Meyerowitz* (1975), 61 Ill. 2d 200, 211, 335 N.E.2d 1; *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 95, 109, 306 N.E.2d 299.) *Lakefront Realty* is based on the rule that the sovereign is not obligated to pay interest unless it gives its consent by act of its legislature or by contract entered into by its officers. (*United States v. North Carolina* (1890), 136 U.S. 211, 216, 34 L. Ed. 336, 338, 10 S. Ct. 920, 922.) This rule is founded on the principle that in the absence of a contract to pay interest, interest is only awarded for delay or default by the debtor, and delay or default cannot be attributed to the government as the government is presumed to be always ready to pay what it owes. *Schlesinger v. State* (1928), 195 Wis. 366, 368-69, 218 N.W. 440, 441, cited with approval in *Lakefront Realty Corp. v. Lorenz,* 19 Ill. 2d at 421.

The plaintiff does not dispute the rule's validity, but questions its applicability in the present case. The plaintiff contends that under the statute in question, the money deposited with the State Treasurer is private property having legal consequences which are controlling. The plaintiff refers us to the statutory language which distinguishes between a "deposit" of funds and a "payment" of taxes. Under the Act, interest to be charged for unpaid taxes is avoided if "a *deposit* is made with the county treasurer *to be applied* to the *payment* of the tax when finally determined." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 120, par. 377(c).) The plaintiff asserts that the funds deposited with the Treasurer are owned by the estate because the funds are not "applied to the payment" of the inheritance tax until the amount owing has been finally determined. Hence, the excess deposit, having always belonged to the estate, must be refunded along with any interest earned through its investment. The plaintiff does not maintain that such deposits have to be invested, but contends that when they

are, any interest earned belongs to the depositor. The plaintiff rests this conclusion on several theories as set forth in his four-count complaint.

Beginning with the premise that the deposit is private property, the plaintiff argues the funds are protected by the fifth amendment prohibition against the taking of private property for public use without just compensation as applied to the States through the fourteenth amendment. (U.S. Const., amends. V, XIV.) The plaintiff also relies on the identical prohibition contained in the Illinois Constitution. (Ill. Const. 1970, art. 1, §15.) The plaintiff further argues that withholding the interest constitutes a breach of fiduciary duty and unjust enrichment. Consequently, the plaintiff prays that a constructive trust be placed upon the interest income. For these latter contentions, the plaintiff relies on the rule that equity may award interest when warranted by equitable considerations even though the statute in question is silent as to interest liability. *City of Springfield v. Allphin* (1980), 82 Ill. 2d 571, 413 N.E.2d 394.

In contending that there is a "taking" of private property in violation of the fifth amendment and article I, section 15, of the Illinois Constitution, the plaintiff focuses on the drafters' use of the term "deposit" in section 3. Citing *Sears v. First Federal Savings & Loan Association* (1971), 1 Ill. App. 3d 621, 628, 275 N.E.2d 300, the plaintiff asserts that by definition, a depositor retains property rights in his deposit, among which is the right to receive back all or part of the deposit. In contrast, a "payment" is money paid to a creditor in satisfaction of a debt. (*Sears*, 1 Ill. App. 3d at 629.) From this, the plaintiff maintains that the estate's deposit is private property and, thus, the government cannot use it for public purpose without just compensation. The plaintiff relies on our supreme court's decision in *Morton Grove Park District v. American National Bank & Trust Co.* (1980), 78 Ill. 2d 353, 399 N.E.2d 1295, for the proposition that using the deposit to earn interest is a taking of private property for public purpose without just compensation.

In *Morton Grove*, the park district had condemned several parcels of real estate under authority of the Eminent Domain Act. A jury determined the fair market value of the real estate, and the condemnees appealed the amount awarded. Pursuant to the act, the park district was placed in possession of the property, and the condemnation award was deposited with the county treasurer pending appeal. The condemnees lost their appeal and subsequently petitioned the trial court, requesting that the county treasurer be ordered to pay out the condemnation award and the interest income that had been earned during the

appeal process. The trial court denied the condemnees the interest income and the appellate court affirmed.

In addressing the question of whether the condemnees were entitled to the interest income, the supreme court evaluated the procedures under the Eminent Domain Act. The court noted that the condemnor is placed in possession of the condemned property even though the condemnees appeal the amount of the award. Because the condemnation award that is deposited with the county treasurer is a substitute for the property owned by the condemnees, the court concluded that the deposited funds were private property. (*Morton Grove Park District*, 78 Ill. 2d at 360.) Therefore, the court held that the use of the money by the county to earn interest constituted a taking of private property without just compensation. *Morton Grove Park District*, 78 Ill. 2d at 362.

The plaintiff's argument is persuasive, but we disagree with his conclusions. The plaintiff may be correct that the estate's deposit is private property, but it does not necessarily follow that the government's action constitutes a "taking" of such property. The plaintiff's argument is defective because it fails to take into account the true nature of the transaction. Also, the condemnation award was not a tax.

The power of taxation is inherent in a sovereign State. (See generally 71 Am. Jur. 2d *State & Local Taxation* §71 (1973); 26 Ruling Case Law, *Taxation* §12, at 26 (1920).) The power to tax exists independently of the State's Constitution because government cannot exist without it. (71 Am. Jur. 2d *State & Local Taxation* §6 (1973); 26 Ruling Case Law, *Taxation* §12, at 26 (1920).) Thus, the provisions of the sovereign State's Constitution which relate to the power of taxation do not operate as grants of the power of taxation, but constitute limitations upon a power which is otherwise without limit. (71 Am. Jur. 2d *State & Local Taxation* §68 (1973); 26 Ruling Case Law, *Taxation* §12, at 26 (1920).) In implementing the power of taxation, the legislature enacts what it deems the most efficient methods for raising and collecting revenue. 71 Am. Jur. 2d *State & Local Taxation* §73 (1973).

The statutory method of collecting inheritance taxes enacted in Illinois is analogous to the Federal system of collecting income taxes whereby income is periodically withheld (a deposit) and overpayments are refunded. In *Jacobs v. Gromatsky* (5th Cir. 1974), 494 F.2d 513, a taxpayer filed a class action suit alleging that the Federal tax-collecting scheme was unconstitutional in violation of the fifth amendment. The taxpayer advanced the same argument that the

failure of the tax statutes to provide for the payment of interest on withholding and estimated tax payments which are later refunded as overpayments constituted a taking of property without just compensation. The government responded with the same contention as advanced here, that interest liability cannot be imposed upon the government in the absence of statutory authority. The court upheld the tax-collecting scheme, but not for the reasons advanced by the government. The court explained:

> "The complete answer lies instead in the powers vested in the Congress to lay and collect taxes on incomes, under the sixteenth amendment. This power not only includes prescribing the basic rates of taxation, the time and manner in which taxes are to be paid; but also includes the means and methods for making refunds—with or without interest, which must be viewed realistically as no more than one function of the overall rate of such exaction." (*Jacobs v. Gromatsky*, 494 F.2d at 514.)

The power of the State to lay and collect taxes no doubt includes the authority to implement similar tax-collecting methods, including payment of deposits pending final determination of the amount of taxes owed. (Ill. Const. 1970, art. 9, §1.) The deposits made pursuant to the Inheritance and Transfer Tax Law are part of the overall machinery for tax collection in this State, and the benefit inuring to the State through investment of the deposits must also be viewed as part of the overall rate of exaction. See also *Cameron v. Internal Revenue Service* (N.D. Ind. 1984), 593 F. Supp. 1540, 1554 (wherein the court held that the failure to take into account the effect of inflation for Federal income tax refunds did not constitute a "taking" in violation of the fifth amendment).

Placing great emphasis on the drafters' use of the term "deposit," the plaintiff asserted in oral argument that *Jacobs* is distinguishable. We believe, however, that whether a transfer of funds to the government is a withholding, estimated tax, advance payment or a deposit, such transfers are functionally the same. Our research reveals that the plaintiff places too much emphasis on the term "deposit." There are older cases where taxpayers sought to avoid the term, contending that their estimated tax payments were "payments" and not "deposits" in order to bring their estimated tax payments within the Federal revenue statute providing for interest on overpayments. In *Moses v. United States* (S.D.N.Y. 1939), 28 F. Supp. 817, an executor sent to the collector a check for $20,000 with a letter stating that the check "was to apply on account of the federal estate tax liability" of the deceased. (*Moses*, 28 F. Supp. at 818.) After the estate

tax was finally determined, the executor received a refund without interest, prompting the executor to file a complaint. Relying on the rule that government is not liable for interest without its consent, the court examined the nature of the transaction to determine whether the executor's advance payment constituted a "payment" of taxes under the applicable statute providing for interest on overpayments. (*Moses*, 28 F. Supp. at 818.) The court held that the executor's advance payment was a deposit and, therefore, the executor was not entitled to interest on his refund. (*Moses*, 28 F. Supp. at 819.) In describing the nature of the transaction, the court wrote:

> "In this case the Government was powerless at the time the money was delivered to it to determine how much, if any, was actually due. The excess contained in this taxpayer's deposit was, in no sense, either payment or overpayment but a deposit made to suit his own convenience. This is true before and after assessment. Although the regulations do not explicitly authorize the Collector to accept unliquidated amounts in payment of estate taxes, we see no reason why any citizen should not have the right to defeat the addition of interest, 26 U.S.C.A. §493(a), by payment if he so desires. Neither do we see why the Government, for so accommodating him, should be required to pay interest on the money it may thus accept. The taxpayer has all the advantage; the computation of the debt is his own, and he is done no injustice by insistence on his own accuracy." *Moses*, 28 F. Supp. at 819.

■ This identical issue was addressed in *Busser v. United States* (3rd Cir. 1942), 130 F.2d 537. There, the Third Circuit arrived at the same conclusion, holding that an executor was not entitled to interest on a refund because his advance payment was a deposit and not a payment. (*Busser*, 130 F.2d at 539.) The court applied the same principle, stating that "[t]he question turns upon the application of an appropriate statute for the sovereign is not liable for interest unless there is a statutory requirement or a contract to pay it." (*Busser*, 130 F.2d at 538.) These decisions were cited by the United States Supreme Court in *Rosenman v. United States* (1945), 323 U.S. 658, 662-63, 89 L. Ed. 535, 540, 65 S. Ct. 536, 539, wherein the Court explained that "[m]oney in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due." Thus, it is clear that in the absence of an applicable statute expressing the sovereign's consent to pay interest, taxpayers are not entitled to interest on funds deposited with the government that are subsequently refunded

after a part of such funds are applied for payment of taxes. It is presumed that the legislature acted with full knowledge of judicial decisions concerning prior and existing law and legislation. (*Kozak v. Retirement Board of Firemen's Annuity & Benefit Fund* (1981), 99 Ill. App. 3d 1015, 1018, 425 N.E.2d 1371.) Accordingly, we hold that the State's use of estate funds deposited pursuant to the Inheritance and Transfer Tax Law to earn interest is not a taking in violation of the United States Constitution or the Illinois Constitution.

■ Having decided there is no "taking," we turn to the relevant statutes for determining whether the State is obligated to pay interest when excess funds are refunded to the estate. Section 3 is silent on the subject of interest on refunds for excess deposits. Because a sovereign does not have to pay interest without its consent, such silence discloses an intent to deny interest. (*Lakefront Realty Corp. v. Lorenz*, 19 Ill. 2d at 423; *Schlesinger v. State*, 195 Wis. at 368-69, 218 N.W. at 441.) Thus, in the absence of clear language imposing such liability, the State does not have to pay interest. (*Lakefront Realty Corp.*, 19 Ill. 2d at 423.) Further, notwithstanding this rule of statutory construction, it is clear that the General Assembly's silence on the subject of interest in section 3 was not an inadvertent omission. The clause in dispute here allowing the estate to avoid the addition of interest on unpaid taxes by making a deposit was added to section 3 in 1933. (Ill. Rev. Stat. 1933, ch. 120, par. 377.) As initially approved in 1909, section 25 required the State to pay interest at the rate of 3% per annum on estate tax refunds dealing with conditional or contingent transfers. (Ill. Rev. Stat. 1909, ch. 120, par. 412.) The General Assembly, however, deleted this interest clause in 1937, thereby removing the only provision providing for interest on refunds. (Ill. Rev. Stat. 1937, ch. 120, par. 398.) Thus, the silence on the subject of interest on refunds in section 3 is, if anything, indicative of an intent to deny interest.

■ In addition to the failure of the legislature to clearly provide for interest on refunds in section 3, there is statutory authority permitting the State Treasurer to invest the estate's deposit and keep the interest income. Pursuant to "An Act relating to certain investments of public funds by public agencies" (the Public Funds Act) (Ill. Rev. Stat. 1981, ch. 85, par. 902), any public agency may invest public funds and:

> "To the extent a public agency has custody of funds not owned by it or another public agency and does not otherwise have authority to invest such funds, the public agency may invest such funds as if they were its own." (Ill. Rev. Stat. 1981,

ch. 85, par. 902.)

The Public Funds Act further provides:

> "All earning accruing on any investments or deposits made pursuant to the provisions of this Act shall be credited to the public agency by or for which such investments or deposits were made, except where by specific statutory provisions such earnings are directed to be credited to and paid to a particular fund." (Ill. Rev. Stat. 1981, ch. 85, par. 902.)

Additionally, section 2 of "An Act in relation to State moneys" (Ill. Rev. Stat. 1985, ch. 130, par. 21) provides in pertinent part:

> "All interest received or paid on account of money in the State treasury belonging to or for the use of the State so deposited in banks or savings and loan associations, shall be the property of the State of Illinois. If any moneys held in special funds in the State treasury, not belonging to the State, shall be deposited in banks or savings and loan associations pursuant to the provisions of this Act, the interest received thereon shall be credited to the special fund so deposited."

The estate's deposit was collected by the State Treasurer on behalf of the State, and the Inheritance and Transfer Tax Law does not contain any provision directing the State Treasurer to deposit the funds in a "particular fund." Similarly, the inheritance tax law makes no mention of "special funds." Compare *Shell Oil Co. v. Department of Revenue* (1983), 95 Ill. 2d 541, 548-49, 449 N.E.2d 65.

In *Shell Oil* funds were deposited in a "particular fund." In *Shell Oil* the question was whether a taxpayer whose protest had been upheld was entitled to interest income earned on the erroneously assessed taxes that by order of court were paid into a protest fund and held by the State Treasurer as trustee. This case involved the retail occupation tax on sales of jet fuel. Retail taxes were paid under protest pursuant to "An Act in relation to the payment and disposition of moneys received by officers and employees of the State of Illinois by virtue of their office or employment" (the Protest Monies Act) (Ill. Rev. Stat. 1979, ch. 127, par. 170 *et seq.*). *Shell Oil* reaffirmed *Lakefront Realty*, stating "[i]nterest is not normally recoverable, in the absence of a statute or an agreement providing for it." (*Shell Oil Co. v. Department of Revenue* (1983), 95 Ill. 2d 541, 546, 449 N.E.2d 65.) Nonetheless, the court awarded the interest income to Shell Oil Company, holding that at no time did the protest fund become the property of the State and that the Treasurer acted as trustee of the protest fund. The Protest Monies Act specifically provides for money paid under protest to be placed by the Treasurer in a special fund to

be known as a protest fund until further order or judgment of the court. Ill. Rev. Stat. 1979, ch. 127, par. 172.

■■ In the case before us, there is no statute providing for a "particular fund" to be set up in order to keep the funds segregated, nor do we have a court order directing payment to a "particular fund" to be held by the Treasurer as trustee. Thus, the State Treasurer is authorized to invest the estate's deposit and keep the interest income.

The plaintiff also contends that equitable considerations require that a constructive trust be imposed. In *City of Springfield v. Allphin* (1980), 82 Ill. 2d 571, 579, 413 N.E.2d 394, the court reiterated the principle that equity may award interest even though the statute in question does not provide for it. The plaintiff contends that the State Treasurer owes a fiduciary duty to the estate and, therefore, the Treasurer must pass along any benefits gained on the deposit to the estate. The plaintiff urges this court to impose a constructive trust in order to prevent the State from becoming unjustly enriched.

■■ A court will generally utilize the remedy of constructive trust where there exists either fraud or abuse of a confidential or fiduciary relationship. (*E.g., People ex rel. Daley v. Warren Motors, Inc.* (1985), 136 Ill. App. 3d 505, 511, 483 N.E.2d 427.) In Illinois, however, it has been established that the remedy is not limited to those grounds. (*People ex rel. Daley v. Warren Motors, Inc.*, 136 Ill. App. 3d at 511.) "The purpose of a constructive trust is to compel the party unfairly holding the money or property to convey it to whom it justly belongs," and the circumstances under which a constructive trust will be imposed are "as numberless as the modes by which property may be obtained through bad faith and unconscientious acts." *People ex rel. Daley v. Warren Motors, Inc.*, 136 Ill. App. 3d at 510, 511.

■■ In view of our earlier findings, this case does not present the circumstances required to invoke the equitable powers of the court. The State Treasurer is not wrongfully holding property that justly belongs to the estate. Further, in *Gonzales v. Danaher* (1975), 30 Ill. App. 3d 992, 995, 332 N.E.2d 603, a case dealing with interest income earned on a bail bond, this court rejected the contention that the clerk of the court acted in a fiduciary capacity and applied *Lakefront Realty* in holding that Gonzales was not entitled to the interest. (See also *Thornton, Ltd. v. Kusper* (1979), 77 Ill. App. 3d 192, 196, 395 N.E.2d 1050.) Most recently, in *Madlener v. Finley* (1989), 128 Ill. 2d 147, 154, 538 N.E.2d 520, our supreme court held that government officials do not have a fiduciary duty to invest funds deposited with them in interest-bearing accounts where they are not required by stat-

ute to pay interest. Thus, the State Treasurer does not stand in a fiduciary capacity as to the estate. To some, the use of these deposits to earn interest for the State's benefit may seem unfair, but the question of fairness is one for the General Assembly and not for the judiciary.

In summary, we hold that use of the estate's deposit to earn interest is not a "taking" of private property for public use without just compensation. Because section 3 is silent on the subject of interest on refunds of excess deposits, the State is not obligated to pay interest on such refunds. Moreover, the State Treasurer is authorized to invest the estate's funds and keep the interest income under the Public Funds Act. Consequently, there are no equitable considerations requiring imposition of a constructive trust.

For the foregoing reasons the order of circuit court is affirmed.

Judgment affirmed.

FREEMAN, P.J., and WHITE, J., concur.