DARNIECE BAILEY TURNIPSEED *et al.*, Plaintiffs-Appellees, v. DOROTHY BROWN, Clerk of the Circuit Court of Cook County in Her Official Capacity, *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—08—2571

Opinion filed May 4, 2009.

Richard A. Devine, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Paul A. Castiglione, Stephen L. Garcia, and Catherine M. Kelly, Assistant State's Attorneys, of counsel), for appellants.

Arthur T. Susman, Matthew Hurst, and Gina Lamancusa, all of Susman, Heffner & Hurst, John R. Wylie and Charles R. Watkins, both of Futterman Howard Watkins Wylie & Ashley, Chtrd., and Elliot Zinger, of Elliot Zinger & Associates, all of Chicago, for appellees.

PRESIDING JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Plaintiffs Darniece Bailey Turnipseed, Ramon Turnipseed, and Raymond Thomas seek to recover the interest that accrued on money that they deposited with defendant Dorothy Brown, the clerk of the circuit court of Cook County, in connection with bail bonds that they executed. In addition to suing defendant Brown, plaintiffs sued the county of Cook, a body politic,[1] which, plaintiffs allege, would be liable for any judgement issued against defendant Brown.

---

[1] "Each county *** shall be a body politic and corporate, by the name and style of 'The county of ....,' and by that name may sue and be sued, plead and may be impleaded, defend and be defended against in any court having jurisdiction of the subject-matter ***." 55 ILCS 5/5—1001 (West 2006).

On August 19, 2008, the circuit court of Cook county granted plaintiffs' motion for class certification and denied defendants' motion to dismiss. On October 16, 2008, the appellate court granted defendants' petition for leave to appeal the trial court's grant of class certification. For the reasons discussed below, we reverse the orders granting class certification and denying defendants' motion to dismiss.

## BACKGROUND

Plaintiffs allege that, on February 2, 2002, plaintiffs Darniece Bailey Turnipseed and Ramon Turnipseed deposited $100 with defendant Brown. The amount was 10% of the $1,000 bail that had been set for plaintiff Darniece Bailey Turnipseed in a criminal matter.

The Turnipseeds made their deposit pursuant to the Illinois Code of Criminal Procedure of 1963, which provides that a "person for whom bail has been set" may obtain his or her release by executing a bail bond and depositing with the clerk of the court "a sum of money equal to 10% of the bail," with a minimum deposit of $25. 725 ILCS 5/110—7(a) (West 2006).

Plaintiffs allege that defendant Brown placed the bail bond money in an interest-bearing account. Defendants concede that defendant Brown does place bail bond money in an interest-bearing account, as required by Cook County Ordinance No. 93—0—45. Section 34—4(b) of this ordinance provides that: "All elected and appointed public officials of Cook County are directed to invest public funds in their possession or for which they are custodians in interest-bearing accounts ***." Cook County Taxpayers' Interest Assurance Ordinance No. 93—0—45 §34—4(b) (November 16, 1993).

Plaintiffs allege that on April 3, 2002, all criminal charges against plaintiff Darniece Bailey Turnipseed were dropped for want of prosecution; and defendant Brown returned $90 to plaintiff Darniece Bailey Turnipseed. The returned amount ($90) was equal to the deposited amount ($100) minus 10% ($10) allowed by statute for costs. 725 ILCS 5/110—7(f) (West 2006) (clerk retains "as bail bond costs 10% of the amount deposited"). Plaintiffs allege that Brown did not pay the interest allegedly earned on the deposit. Plaintiffs allege, based upon information and belief, that defendant Brown transferred the interest to defendant Cook County.

Plaintiffs also allege that on December 17, 2003, plaintiff Raymond Thomas deposited $17,500 as bond for the $175,000 bail set for his brother. Plaintiffs allege that on November 22, 2005, defendant Brown returned $15,750 to "Mr. Thomas." Plaintiffs fail to specify whether "Mr. Thomas" in this instance refers to the plaintiff or to his brother. As with the Turnipseeds, the amount returned to Thomas

was equal to the deposited amount, minus the 10% retained by defendant Brown for costs, as authorized by statute. 725 ILCS 5/110—7(f) (West 2006). Again, plaintiffs allege that defendant Brown did not pay the interest earned on the deposit.

Defendant Dorothy Brown is the clerk of the circuit court of Cook County, and she is sued in her official capacity. Plaintiffs allege that defendant Brown is charged with supervising and administering the collection, management and return of bail bond deposits. Plaintiffs also allege that defendant County of Cook would be required to pay any judgment entered in this case against defendant Brown in her official capacity, since the county funds the clerk's office.

Plaintiffs' second amended complaint is the complaint at issue in this appeal. It alleges that section 110—7(f) of the Illinois Code of Criminal Procedure (725 ILCS 5/110—7(f) (West 2006)) prohibits defendant Brown from paying interest on bail bond money to the individuals who deposited it.

Section 110—7(f) provides in relevant part:

> "When the conditions of the bail bond have been performed and the accused has been discharged from all obligations in the cause the clerk of the court shall return to the accused or to the defendant's designee by an assignment executed at the time the bail amount is deposited, unless the court orders otherwise, 90% of the sum which had been deposited and shall retain as bail bond costs 10% of the amount deposited. However, in no event shall the amount retained by the clerk as bail bond costs be less than $5." 725 ILCS 5/110—7(f) (West 2006).

Subsection (f), quoted above, requires the clerk to pay 90% of the bail amount to "the accused or to the defendant's designee." The subsection is completely silent about interest. Although subsection (f) is detailed in many respects, it does not use the word "interest" once. However, defendants admit that defendant Brown does not pay any interest earned on bail bond money.

Subsection (f) requires the clerk to pay the required amount to either "the accused or to the defendant's designee." Plaintiffs failed to allege in their complaint whether the brother of Raymond Thomas assigned his bail money to plaintiff Raymond Thomas. If no assignment was executed, then plaintiff Raymond Thomas was not owed any money by defendant Brown. The complaint also does not allege whether plaintiff Darniece Bailey Turnipseed assigned her bail money to plaintiff Ramon Turnipseed.

The second amended complaint seeks: (1) declaratory relief that subsection (f) is facially unconstitutional; (2) compensation for the alleged taking of plaintiffs' and the class's private property, namely, the

interest that accrued on the bail bond money while it was held by defendant Brown; and (3) injunctive relief to prevent further constitutional violations.

Count I alleges that the alleged failure to pay interest is a taking of property in violation of section 15 of article I of the Illinois Constitution, as well as the fifth and fourteenth amendments to the United States Constitution. Section 15 of article I of the Illinois Constitution provides that: "[p]rivate property shall not be taken or damaged for public use without just compensation as provided by law." Ill. Const. 1970, art. I, §15. Similarly, the fifth amendment to the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const., amend. V. These clauses are commonly known as the "takings clauses." *Empress Casino Joliet Corp. v. Giannoulias*, 231 Ill. 2d 62, 81 (2008). The fifth amendment is made applicable to the states by the fourteenth amendment. U.S. Const., amend. XIV; *Kelo v. City of New London*, 545 U.S. 469, 472 & n.1, 162 L. Ed. 2d 439, 447 & n.1, 125 S. Ct. 2655, 2658 & n.1 (2005) ("the Takings Clause of the Fifth Amendment to the [United States] Constitution" is "made applicable to the States by the Fourteenth Amendment"); *Empress Casino*, 231 Ill. 2d at 80.

Count II alleges a federal constitutional tort, pursuant to 42 U.S.C. §1983. Section 1983 provides that if a person acts "under color" of state law and thereby deprives another of a right secured by the United States Constitution, he or she "shall be liable to the party injured." 42 U.S.C. §1983 (2000).

The second amended complaint describes the proposed class as follows:

> "All persons who deposited bail bond funds with the Clerk of the Circuit Court of Cook County pursuant to the Illinois Code of Criminal Procedure, and whose bail bond funds were returned to them during the period from October 18, 1999 through the date of final judgment in this action."

The proposed class is limited to those persons "whose bail bond funds were returned to them." Subsection (f) provides many reasons why bail bond money may not be returned. 725 ILCS 5/110—7(f) (West 2006). It states in relevant part:

> "Bail bond deposited by or on behalf of a defendant in one case may be used, in the court's discretion, to satisfy financial obligations of that same defendant incurred in a different case due to a fine, court costs, restitution or fees of the defendant's attorney of record. In counties with a population of 3,000,000 or more, the court shall not order bail bond deposited by or on behalf of a defendant in one case to be used to satisfy financial obligations of

that same defendant in a different case until the bail bond is first used to satisfy court costs and attorney's fees in the case in which the bail bond has been deposited and any other unpaid child support obligations are satisfied. ***

At the request of the defendant the court may order such 90% of defendant's bail deposit, or whatever amount is repayable to defendant from such deposit, to be paid to defendant's attorney of record." 725 ILCS 5/110—7(f) (West 2006).

Thus, bail bond money may be used to pay court costs, attorney fees, child support obligations, and financial obligations of the defendant incurred in a different case. 725 ILCS 5/110—7(f) (West 2006).[2] Of course, the money will also not be returned if the defendant fails to appear. 725 ILCS 5/110—7(g) (West 2006). The description of the proposed class, contained in plaintiffs' second amended complaint, excludes those persons whose bail bond money was not returned.

Defendants moved to dismiss, pursuant to section 2—615 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 2006)), claiming that the complaint was legally insufficient. On August 19, 2008, in a written order, the trial court granted plaintiffs' motion for class certification and denied defendants' motion to dismiss.

On October 16, 2008, the appellate court granted defendants' petition for leave to appeal the trial court's grant of class certification. Defendants in their appellate brief to this court state that they intend to assert an affirmative defense based on statute of limitations and that the applicable statutes of limitations are violated by the five-year period certified by the trial court. Since the statute of limitations is a defense that may be waived if not asserted, and since no such defense has yet been asserted in the case at bar, we will not consider this issue on this interlocutory appeal.

## ANALYSIS

On this appeal, defendants claim that the trial court should not have certified the class, because the complaint failed to state a cause of action. Defendants also claim that, even if the complaint stated a valid claim, the named plaintiffs are not adequate representatives of the class and the class is too broad.

---

[2]The bail bond form includes "a written notice to such person who has provided the defendant with the money for the posting of bail indicating that the bail may be used to pay costs, attorney's fees, fines, or other purposes authorized by the court and if the defendant fails to comply with the conditions of the bail bond" the money shall be forfeited. 725 ILCS 5/110—7(a) (West 2006).

### Interlocutory Appeal

■ Defendants' petition for leave to appeal was granted pursuant to Supreme Court Rule 306(a)(8), which provides:

"(a) *** A party may petition for leave to appeal to the Appellate Court from the following orders of the trial court:

\* \* \*

(8) from an order of the circuit court denying or granting certification of a class action under section 2—802 of the Code of Civil Procedure (735 IlCS 5/2—802)." 210 Ill. 2d R. 306(a)(8).

The rule, quoted above, refers to section 2—802 of the Code of Civil Procedure (735 ILCS 5/2—802 (West 2006)), which requires a trial court to determine, "as soon as practicable" after the filing of a class action, whether the suit may be maintained as a class action.

### Statutory Prerequisites

■ Section 2—801 of the Code of Civil Procedure lists four prerequisites for a class action:

"An action may be maintained as a class action in any court of the State and a party may sue or be sued as a representative party of the class only if the court finds:

(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3) The representative parties will fairly and adequately protect the interest of the class.

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2—801 (West 2006).

Our supreme court has held that plaintiffs bear the burden of demonstrating that their suit satisfies the four statutory prerequisites. *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 72 (2007); *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 125 (2005) ("a class may be certified only if the proponent establishes the four prerequisites set forth in the statute").

### Threshold Issue

In addition to the statutory prerequisites listed above, our supreme court has held that as "a threshold matter," a trial court must determine whether the claim asserted by plaintiffs is "an actionable claim." *Barbara's Sales*, 227 Ill. 2d at 72; *Avery*, 216 Ill. 2d at 139 (" 'It is well settled that a class cannot be certified unless the named plaintiffs

have a cause of action' "), quoting *Spring Mill Townhomes Ass'n v. Osla Financial Services, Inc.*, 124 Ill. App. 3d 774, 779 (1983). If we find that the claim is not actionable, then "[w]e need not determine whether plaintiffs satisfy [the statutory] class requirements" listed in section 2—801 (735 ILCS 5/2—801 (West 2006)). *Barbara's Sales*, 227 Ill. 2d at 72. For example, in *Barbara's Sales*, our supreme court overturned the trial court's decision regarding class certification, because plaintiff's claim was not actionable. *Barbara's Sales*, 227 Ill. 2d at 76-77. Having resolved the certification issue on this basis, the supreme court found that it did not need to consider the four prerequisites listed in the statute. *Barbara's Sales*, 227 Ill. 2d at 76-77. See also *Landesman v. General Motors Corp.*, 72 Ill. 2d 44, 49 (1978) (remanded to trial court with instructions to determine first "whether plaintiff's complaint stated a valid cause of action" and to consider the statutory prerequisites only if it found that a valid cause was stated); *Gonzalez v. Danaher*, 30 Ill. App. 3d 992, 996 (1975) (since plaintiff does not have a valid claim for interest on his bail bond, we do not have to consider the propriety of his proposed class action).

Defendant claims on appeal that the trial court should not have certified the class, because plaintiffs failed to state a cause of action. In reviewing the legal sufficiency of a claim, we regard all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Lozman v. Putnam*, 379 Ill. App. 3d 807, 821 (2008). We construe the claim liberally and find it insufficient only when it appears that plaintiffs could not recover under any set of facts. *Lozman*, 379 Ill. App. 3d at 821. At this early stage, plaintiffs need not prove their case, and the trial court should not rule on the factual merits of their claim. *Cruz v. Unilock Chicago, Inc.*, 383 Ill. App. 3d 752, 764-65 (2008).

## Standard of Review

The legal sufficiency of a claim is purely a question of law, which we review *de novo. Barbara's Sales*, 227 Ill. 2d at 57-58. This standard is different from the standard for reviewing the statutory prerequisites for a class action. A trial court's decision regarding the four prerequisites is within its sound discretion, and an appellate court will overturn it only if the trial court "abused its discretion or applied impermissible legal criteria." *Avery*, 216 Ill. 2d at 125-26. However, as we will explain below, our holding would be the same under either standard.

## Validity of Claim

Defendants claim that plaintiffs have not stated a cause of action because plaintiffs' bail bond agreement was a contract under Illinois

law and the agreement did not provide plaintiffs with a contractual right to interest. Defendants argue that, since plaintiffs had no contractual or statutory right to interest, there was no taking, for the purpose of the takings clauses of the United States and Illinois Constitutions, as plaintiffs allege. In addition, defendants argue that plaintiff's claims are not valid because economic losses are generally not recoverable in tort actions, such as the constitutional tort action brought by plaintiffs. See generally *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982).

Plaintiffs claim that there is a long-standing common law rule that interest follows principal. See, *e.g.*, *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164, 66 L. Ed. 2d 358, 366, 101 S. Ct. 446, 452 (1980). Plaintiffs claim that, since ownership of the principal never changed hands, the interest belonged to the depositors and defendant Brown's retention of that interest constituted a taking, for constitutional purposes.

In their appellate brief, plaintiffs also claim that, since the applicable statute is silent concerning interest, it does not bar defendant Brown from paying interest. However, this argument is at odds with their complaint, which claimed that the statute barred the return of interest. Their second amended complaint alleged that "725 ILCS 5/110—7(f) [(West 2006)], in prohibiting the return of interest on the private property held in custody by Defendant Brown, *** is facially unconstitutional."

Since there can be no taking unless there was a right to the thing allegedly taken, we will consider first whether plaintiffs had a right to the interest. *In re Marriage of Crook*, 211 Ill. 2d 437, 448 (2004); *Cwik v. Topinka*, 389 Ill. App. 3d 21 (2009) (for a taking to occur, plaintiff must have a right to the property based on existing law). In addition, it is well established that an appellate court must first consider all nonconstitutional issues before proceeding to rule on a constitutional ground. *People v. Melchor*, 226 Ill. 2d 24, 34 (2007), citing *In re E.H.*, 224 Ill. 2d 172, 178 (2006). Thus, we will decide first whether plaintiffs had a legal right to the interest before considering whether defendants' retention of that interest rose to the level of a constitutional violation.

■ There is no statute or contract which gave plaintiffs a right to the interest. As noted above, the statute is silent concerning interest. 725 ILCS 5/110—7(f) (West 2006). To the extent that the statute formed the basis of a contract, then this contract was also silent about interest.

Over 30 years ago, this court considered the same section at issue in this appeal and ruled that the section's silence indicated that the legislature did not intend to confer a right to interest. *Gonzalez*, 30 Ill.

App. 3d at 994. The facts of *Gonzalez* are almost identical with the facts in the case at bar. In *Gonzalez*, an accused deposited money with the clerk of the circuit court of Cook County to secure a bail bond. *Gonzalez*, 30 Ill. App. 3d at 993. When the criminal charges against the accused were dismissed, the clerk paid him the amount of his deposit, minus 10% for costs. *Gonzalez*, 30 Ill. App. 3d at 993. He then brought suit, in order to recover the interest actually earned on the deposit. *Gonzalez*, 30 Ill. App. 3d at 993, 994-95 (plaintiff's case was distinguished from a case in which "no interest had been accumulated"). This court held that, "[b]y its silence on the subject of interest," the legislature intended to deny a right to recover it. *Gonzalez*, 30 Ill. App. 3d at 994, citing *Lakefront Realty v. Lorenz*, 19 Ill. 2d 415, 423 (1960) ("the silence of our refund statute on the question of interest discloses a legislative intent to deny it"). See also *Madlener v. Finley*, 128 Ill. 2d 147, 154 (1989) (discussing both *Gonzalez* and *Lakefront* with approval); *Mannix v. Donnewald*, 187 Ill. App. 3d 472, 481 (1989) ("Because a sovereign does not have to pay interest without its consent, such silence discloses an intent to deny interest"). Thus, in the case at bar, plaintiffs have no statutory right to interest.

Instead of a statute or contract, plaintiffs base their claim on, what they argue, is a common law right to interest. However, this court has already ruled on this theory and rejected it. In *Gonzalez*, this court held that an accused had no common law right to interest that was actually earned on bail bond money. *Gonzalez*, 30 Ill. App. 3d at 994. This court stated: "In Illinois, interest cannot be recovered in the absence of a contract or statutory provision." *Gonzalez*, 30 Ill. App. 3d at 994.

To rule for plaintiffs, we would have to reject *Gonzalez*. However, we do not see any reason why the passage of time has weakened the validity of the *Gonzalez* decision. If anything, the passage of time has strengthened it.

A decade after *Gonzalez* was decided, the Illinois Supreme Court acknowledged the *Gonzalez* decision and built on its reasoning. In *Madlener*, our supreme court held that a court clerk had no "common law duty" to deposit a litigant's funds, held pursuant to court order, in an interest-bearing account. *Madlener*, 128 Ill. 2d at 152. First, our supreme court discussed with approval the holding in *Gonzalez* that "persons are not entitled to interest on funds which have been held by government officials unless a statue so provides." *Madlener*, 128 Ill. 2d at 154; see also *Mannix*, 187 Ill. App. 3d at 476 (discussing *Gonzalez* with approval). Next, our supreme court built on that holding to find "the correlative principle" that the "common law" does not require these same officials to deposit such funds in interest-bearing

accounts. *Madlener*, 128 Ill. 2d at 154. This approval by our supreme court strengthens the precedential value of the *Gonzalez* decision.

In *Mannix*, this court explained the logic behind cases like *Gonzalez*, *Madlener*, and *Lakefront*, which rejected the idea that the government had a common law duty to pay interest. In *Mannix*, we explained that holdings like these are "based on the rule that the sovereign is not obligated to pay interest unless it gives its consent by act of its legislature or by contract entered into by its officers." *Mannix*, 187 Ill. App. 3d at 476.

Illinois courts have repeatedly affirmed the rule on which *Gonzalez* is based, that a plaintiff cannot recover interest from the government absent a statute or contract. *Madlener*, 128 Ill. 2d at 152, 154 (absent a statute, government officials have no "common law duty" to deposit funds in an interest-bearing account); *Mannix*, 187 Ill. App. 3d at 476 (since interest is "a creature of statute or contract," a citizen cannot recover it from the government without statutory or contractual "authorization"); *Lakefront*, 19 Ill. 2d at 423 (plaintiff was not entitled to interest on a tax refund because "interest, being a creature of statute, is recoverable only by statute or contract"). See also *Shields v. State Employees Retirement System*, 363 Ill. App. 3d 999, 1005 (2006) ("It is well settled that interest is not recoverable absent a statute or agreement providing for it").

Plaintiffs try to distinguish *Gonzalez* by arguing, first, that the plaintiff in *Gonzalez* did not allege a claim under the takings clauses. This is a distinction without a difference. A plaintiff must have a legal right to property before he or she can claim there was a taking, and in *Gonzalez*, we found that an accused had no legal right to the interest that had accrued on his bail deposit—no statutory right, no contract right and no common law right. *Gonzalez*, 30 Ill. App. 3d at 994. Without a legal right, there can be no basis for plaintiffs' claims under the takings clauses, and thus *Gonzalez* precludes their claims, even though the word "taking" was not used in that case.

Plaintiffs try to distinguish *Gonzalez* by arguing, second, that the appellate court in *Gonzalez* did not "treat" the claim as one for interest that had actually accrued. That is simply not true. The appellate court in *Gonzalez* noted that the facts before it were different from the facts in *Lakeshore* because, in *Lakeshore*, "no interest had been accumulated." *Gonzalez*, 30 Ill. App. 3d at 994. Thus, this argument is based on a mistaken premise.

Plaintiffs also cite a line of cases where citizens disputed the State's right to take certain property, and the property was deposited with the State for safekeeping pending a determination of property

rights; and where the State earned interest on the property and then was ordered to return the interest with the property. *Shell Oil Co. v. Department of Revenue*, 95 Ill. 2d 541, 544, 548 (1983) (taxpayers disputed a tax; during the dispute, the tax was deposited into a protest fund; the State had to pay interest, when the money was found to be erroneously assessed); *Morton Grove Park District v. American National Bank & Trust Co.*, 78 Ill. 2d 353, 357, 365 (1980) (property owners disputed the amount that the park district paid for their condemned property; during the dispute, the county held the amount and later had to pay interest when the amount was released). See also *Canel v. Topinka*, 212 Ill. 2d 311, 313, 331 (2004) (bank delivered stock, that was presumed abandoned, to State for "safekeeping"; the State must return dividends with the stock to stock owner). *Cf. Village of Pawnee v. Johnson*, 103 Ill. 2d 411, 416, 422 (1984) (acting on behalf of municipalities, the State collected municipal taxes and determined the share to be disbursed to each municipality; the State owed interest on taxes that it segregated and simply held for the municipalities).

There are a number of difference between this line of cases and the case at bar. First, the underlying dispute in the case at bar was not a property dispute, but a criminal action. Plaintiffs did not hand the property to the State *for the purpose* of safekeeping, but *for the purpose* of obtaining release. Compare with *Canel*, 212 Ill. 2d at 331 (stock was deposited with state for "safekeeping" during abandonment proceeding); with *Shell Oil*, 95 Ill. 2d at 545-46 (disputed tax was deposited for safekeeping during suit); with *Morton Grove Park District*, 78 Ill. 2d at 360 (disputed condemnation award was deposited for safekeeping during suit); and with *Village of Pawnee*, 103 Ill. 2d at 416 (municipal taxes were collected by the State, on the municipalities' behalf).

Second, in the case at bar, plaintiffs are not disputing the State's right to take the property; in contrast, they are voluntarily handing it over in order to receive a benefit, namely, release on bail. Compare with *Shell Oil*, 95 Ill. 2d at 544 (taxpayers disputed State's right to assess tax); with *Morton Grove Park District*, 78 Ill. 2d at 357 (property owners disputed amount paid for their condemned property); and with *Canel*, 212 Ill. 2d at 313 (owner disputed abandonment of property).

Third, in this line of cases, the depositors expected to be restored to their full ownership rights, at the conclusion of the dispute. *Canel*, 212 Ill. 2d at 331 (where deposited stock was erroneously presumed to be abandoned, owner entitled to its full return); *Village of Pawnee*, 103 Ill. 2d at 416 (municipalities entitled to their full share of

municipal taxes, collected by State on their behalf); *Shell Oil*, 95 Ill. 2d at 548 (taxpayers entitled to full remission of monies that were erroneously assessed); *Morton Grove*, 78 Ill. 2d at 365 (property owners entitled to full condemnation award).

By contrast, in the case at bar, there are many reasons why the depositors may not receive back all of the bail money. It can be used to pay court costs, attorney fees, child support obligations, and fines. 725 ILCS 5/110—7(f) (West 2006). The bail bond form provides written notice to depositors that their money "may be used to pay costs, attorney's fees, fines, or other purposes authorized by the court." 725 ILCS 5/110—7(a) (West 2006). To ensure that nobody will miss the fact that the bail bond money may be used for "other purposes," the statute requires that "[t]he written notice must be: (1) distinguishable from the surrounding text; (2) in bold type or underscored; and (3) in a type size at least 2 points larger than the surrounding type." 725 ILCS 5/110—7(a) (West 2006). Thus, depositors of bail bond money do not necessarily expect to receive their money back, even if the accused appears in court.

For these reasons, we do not find this line of cases to be on point.

■ Applying a *de novo* standard of review, we find that plaintiffs have not stated a valid claim for interest. First, the statute is silent, and silence indicates that the legislature did not intend to confer a statutory right to recover interest. Second, plaintiffs have no common law right to recover interest. Since plaintiffs have no right to the interest, there can be no taking of it.

In addition, the 15-page written order of the trial court did not mention *Gonzalez, Madlener, Mannix* or *Lakefront. Gonzalez*, 30 Ill. App. 3d at 994; *Madlener*, 128 Ill. 2d at 152; *Mannix*, 187 Ill. App. 3d at 476; *Lakefront*, 19 Ill. 2d at 423. Thus, even if we applied an abuse-of-discretion standard of review, we would still reverse, because the trial court failed to consider the relevant legal criteria. *Avery*, 216 Ill. 2d at 125-26.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's orders certifying this suit as a class action and denying defendants' motion to dismiss. We find that plaintiffs failed to state a valid cause of action, and thus their suit must be dismissed. Since plaintiffs' individual claims must be dismissed, we do not decide whether they would have been adequate class representatives or whether the proposed class was too broad. We also do not reach defendants' argument based on the

*Moorman* doctrine. *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982).

Reversed.

HALL and GARCIA, JJ., concur.